## Richmond

COMMONWEALTH OF VIRGINIA v. GREYHOUND LINES, INC., AND
ATLANTIC GREYHOUND LINES OF VIRGINIA, INC.

COMMONWEALTH OF VIRGINIA v. GREYHOUND LINES, INC.
(SOUTHERN GREYHOUND LINES DIVISION) AND ATLANTIC
GREYHOUND LINES OF VIRGINIA, INC.

November 29, 1965.

Record Nos. 6047, 6048.

Present, All the Justices.

*D. Gardiner Tyler, Assistant Attorney General* and *Robert Y. Button, Attorney General,* for the Commonwealth.

*J. Vaughan Gary (John C. Goddin; Shewmake, Gary, Goddin, Blackwell, Elmore & Belcher,* on brief), for the appellees.

GORDON, J., delivered the opinion of the court.

By the decision appealed from, the State Corporation Commission ruled that the Virginia gross receipts road tax is not now applicable to revenue derived from the transportation of property in the appellees' buses. The only question is whether the Commission properly interpreted the provisions of the 1956 amendment to Code § 58-638, [1] the statute imposing the gross receipts road tax.

The appellees (who will be referred to collectively as "Greyhound") hold certificates of public convenience and necessity issued by the State Corporation Commission under Code § 56-280,[2] authorizing Greyhound to engage in intrastate operations as a common carrier of passengers. As authorized by Code § 56-284, the certificates include the authority to transport certain property in the same vehicle with passengers: passengers' baggage, newspapers, express parcels not exceeding one hundred pounds weight, and United States mail. Va. Code Ann. § 56-284 (Supp. 1964).

In its tax returns for the years 1957-1963 and for the first quarter

---

[1] Va. Acts of Assembly 1956, ch.355, at 408, Va. Code Ann. § 58-638 (Repl. vol. 1959), amending Va. Code Ann. § 58-638 (1950).

[2] Va. Code Ann. § 56-280 (Repl. vol. 1959).

of 1964, Greyhound included revenue derived from the transportation of property, as well as passengers, and it paid the gross receipts road tax for those years on total transportation revenue. In 1964, Greyhound filed petitions with the Commission seeking a refund of $26,692.40, the total amount of the gross receipts road tax paid by Greyhound and attributable to revenue derived from the transportation of property during the year 1963. (This was the only prior year not subject to the statute of limitations.) This appeal is from the Commission's orders directing the Commonwealth to refund overpaid taxes in the amount requested by Greyhound.

The relevant provisions of Code § 58-638, as in force before the 1956 amendment and as now in force, are set forth below. The stricken words appeared in the statute before the 1956 amendment; the statute as amended in 1956 (effective April 1, 1957) and now in force does not contain the stricken words.

"§ 58-638. Rate of Tax; levy.—Except as hereinafter otherwise provided, every person who operates, or causes to be operated, on any highway in this State any motor vehicle, trailer, or semi-trailer for the transportation of property for compensation, whether for rent, or for hire, or as a contract carrier, or as a common carrier, and every common carrier by motor vehicle, trailer or semi-trailer of passengers shall pay quarterly to the State Treasurer, on or before the fifteenth day of April, July, October and January of each year, in addition to any other fees and taxes imposed by law upon motor vehicles, trailers and semi-trailers, and upon the operation thereof, and in addition to any motor fuel tax paid or payable by such person, a road tax calculated on the *gross receipts derived from such operations* during a quarter year ending with the preceding month, according to the following schedule:

(1) Two per centum of the gross receipts derived by such person from all intrastate operation; and

(2) Two per centum of such proportion of the gross receipts derived by such person from all interstate operations as the total number of miles traveled in interstate operations by the vehicles of such person on the public highways of this State bears to the total number of miles traveled in interstate operations by the vehicles of such person both within and without this State, including miles traveled on streets in cities and towns embraced within the highway system of this State, but exclusive in each case of the miles traveled in this State on any street maintained exclusively by any city or town."

[The emphasis of the words "gross receipts derived from such operations", by the use of italics above, has been supplied.]

By the terms of the statute, the tax is to be calculated on Greyhound's gross receipts derived from "such operations". The crucial inquiry, then, is what operations are included within the term "such operations".

The obvious interpretation of the statute as amended in 1956 is that "such operations" means operations of a common carrier of passengers, and that the phrase "gross receipts derived from such operations" means gross passenger receipts. These conclusions flow logically from the words of the statute, since it prescribes that any person who operates motor vehicles on State highways "as a common carrier of passengers" shall pay "a road tax calculated on the gross receipts derived from such operations".

The main thrust of the Commonwealth's argument against this obvious interpretation is that the Legislature, in striking the words appearing in the statute before the 1956 amendment, intended to relieve only certain *classes* of carriers from the obligation to pay the gross receipts tax.

Before the 1956 amendment, says the Commonwealth, Code § 58-638 referred to two classes or categories of taxpayers, (1) carriers of property for compensation and (2) common carriers of passengers. Category (1) was eliminated by the striking of the words italicized below:

". . . every person who operates . . . any motor vehicle, trailer or semi-trailer *for the transportation of property for compensation, whether for rent, or for hire, or as a contract carrier, or as a common carrier . . .*"

According to the Commonwealth, Greyhound never fell in category (1); it is a common carrier of passengers, and not a carrier of property, and always fell within the description of "common carrier of passengers" or category (2). So, in the Commonwealth's view, the elimination of property carriers or category (1) by the 1956 amendment could have no effect upon Greyhound or its obligation to pay a tax computed on gross transportation receipts.

But at least in the context of Code § 58-638, Greyhound may be identified not only as a common carrier of passengers, but also as a contract or common carrier of property. Greyhound offers and performs two different transportation services, the transportation of passengers and the transportation of property.

True, the authority to offer and perform both services is derived from one certificate of public convenience and necessity, and Greyhound's authority to transport property may be regarded as incidental to its principal service, the transportation of passengers. It does not follow, however, that to describe Greyhound as both a carrier of persons and a carrier of property is inept. It is not inconsistent, moreover, to conclude that the Legislature intended, by the language of Code § 58-638 (before the words were stricken by the 1956 amendment), to refer to a carrier like Greyhound as both a carrier of property and a common carrier of passengers. "When carrying passengers under a public holding out, these [certain specified carriers] and other carriers are common carriers of goods as to passengers' baggage." Dobie, *Bailments and Carriers* 307.

Bearing in mind the dual services or operations of Greyhound, we can perceive readily why Code § 58-638 required that the gross receipts road tax be calculated on gross transportation receipts before the 1956 amendment (as was conceded by all parties) and now requires that the tax be calculated on gross passenger receipts only. As used in Code § 58-638, the words "gross receipts derived from *such operations*" may be properly interpreted as referring back, before the 1956 amendment, to Greyhound's operations as a carrier of property and as a carrier of persons. These words can now refer back only to its operations as a carrier of passengers, because the 1956 amendment eliminated the previous reference to operations as a carrier of property.

The Commonwealth argues that the provisions of clauses (1) and (2) of Code § 58-638, specifying the rate of the gross receipts road tax, require Greyhound to pay the tax on gross transportation receipts, rather than only on gross passenger receipts. These clauses specify a rate of "Two per centum of the gross receipts derived by such person from all intrastate operation" and two per centum of a proportionate part "of the gross receipts derived by such person from all interstate operations". Having concluded, however, that the words of Code § 58-638 preceding clauses (1) and (2)—that is, the words specifying that the tax shall be "calculated on the gross receipts derived from such operations"—refer to revenue derived from the transportation of passengers only, we cannot accept the Commonwealth's argument based on clauses (1) and (2). The operations referred to in clauses (1) and (2) clearly refer back to the preceding words "such operations".

■ Another point advanced by the Commonwealth is that if the Legislature intended, by the 1956 amendment to Code § 58-638, to eliminate the gross receipts road tax on revenue from the transportation of property, its amendment of Code § 58-639[3] at the same session was vain and unnecessary action. Since the Legislature should not be presumed to have taken vain and unnecessary action, the Commonwealth concludes that such interpretation of Code § 58-638 is erroneous.

As in effect before the 1956 amendment, Code § 58-639 exempted carriers subject to the tax imposed by Code § 58-638 from the payment of the tax "on gross receipts derived from transporting property" between points within a city and between certain other points. The 1956 amendment to Code § 58-639 deleted that exemption. The Commonwealth argues that if we accept Greyhound's argument that the 1956 amendment to Code § 58-638 eliminated any tax on gross receipts derived from transporting property, deletion of the exemption contained in Code § 58-639 was unnecessary.

However, elimination of the gross receipts road tax on all revenue from the transportation of property (which we have found to be the effect of the 1956 amendment to Code § 58-638) made the exemption contained in Code § 58-639 meaningless. The deletion of a meaningless exemption is proper; it is not vain and unnecessary action by the Legislature.

■ The Commonwealth urges that the legislative history of the Virginia gross receipts road tax and other motor vehicle taxes, traced in detail in its brief, supports the Commonwealth's position that the 1956 amendment to Code § 58-638 was not intended to alter Greyhound's obligation to pay a tax on gross transportation receipts. According to the Commonwealth's brief, it it clear that, from the inception of the gross receipts road tax in 1930, (1) this tax was allied with the motor vehicle license tax, (2) common carriers of passengers were authorized to carry mail and baggage, (3) the tax was based on the total gross transportation receipts of such carriers, and (4) motor vehicle carriers of passengers were those that were authorized by the State Corporation Commission to operate as common carriers of passengers.

The Commonwealth argues that these conclusions, drawn from the legislative history, should prompt the further conclusion that the

_____

[3] Va. Acts of Assembly 1956, ch.355, at 408, Va. Code Ann. § 58-639 (Repl. vol. 1959), amending Va. Code Ann. § 58-639 (Supp. 1952)

intent of the 1956 amendment to Code § 58-638 was to relieve only those property carriers commonly referred to as "truckers" from the obligation to pay the gross receipts tax, and not to relieve carriers like Greyhound who are generally classified as common carriers of passengers. In this connection, the Commonwealth points to the increase in license fees and fuel taxes imposed upon truckers by 1956 amendments to Code §§ 46-162 and 58-628.[4]

The Commonwealth's argument, then, is that the Legislature had no impelling reason or motive to relieve carriers like Greyhound of the obligation to pay a gross receipts tax on revenue from the transportation of property. By this argument, the Commonwealth is attempting to explain the meaning of the 1956 amendment to Code § 58-638, not by its language alone, but by extraneous considerations of policy. Though the Commonwealth has not conceded that the language of the statute is ambiguous, it is necessarily basing its argument on ambiguity; otherwise there would be no reason to bring in extraneous matters to explain the meaning of the language of the statute. But even if we were to find that the language is ambiguous, reasons or motives that should have prompted the Legislature to act, or to refrain from acting, cannot win the day for the Commonwealth. A taxing statute, if ambiguous, must be liberally construed in favor of the taxpayer and should not be extended by implication. *Williams* v. *City of Richmond*, 177 Va. 477, 14 S.E.2d 287 (1941).[5]

█ Both the Commonwealth and Greyhound assert that the practical construction or administrative interpretation of Code § 58-638 by state officials supports their conflicting positions.

The Commonwealth points out that the provisions of the predecessor to Code § 58-638 as amended in 1946,[6] and in effect from April 1, 1947 to December 31, 1948, were almost identical with those set forth in the 1956 amendment to Code § 58-638; yet, Greyhound

---

[4] Va. Acts of Assembly 1956, ch.477, at 691, Va. Code Ann. § 46-162 (Supp. 1956), amending Va. Code Ann. § 46-162 (1950); Va. Acts of Assembly 1956, ch.475, at 687, Va. Code Ann. § 58-628 (Repl. vol. 1959), amending Va. Code Ann. § 58-628 (1950).

[5] The Commonwealth argues that the rule of the *Williams* case should not be applied because Greyhound is asking for an exemption from taxation, and exemptions are to be strictly construed against the taxpayer. The question before us, however, is whether the taxing statute, Code § 58-638 as amended, imposes a tax based on revenue from the transportation of persons and property. So we do not have the question of an exemption, but the question of the scope of the tax.

[6] Va. Acts of Assembly 1946, ch. 196, at 330, Va. Code Ann. § 2154 (83) (Cum. Supp. 1946), amending Va. Code Ann. § 2154 (83).

was assessed for the 1947-1948 gross receipts road taxes on the basis of total transportation revenues, and it paid the tax on that basis. Moreover, after the 1956 amendment was enacted, Greyhound was assessed on the basis of gross transportation receipts through the first quarter of 1964, and it paid the tax on that basis.

On the other hand, Greyhound relies upon an administrative interpretation of Code § 58-638 made in the second quarter of 1964, favorable to Greyhound's position. In this regard, Greyhound refers to advice given by one of the State Corporation Commissioners to a supervisor on the staff of the Commission, who was engaged in auditing Greyhound's returns. Being of opinion that under the 1956 amendment the gross receipts road tax applied only to passenger revenue, the supervisor called the Commissioner, who confirmed the supervisor's opinion and advised him that Greyhound had overpaid its taxes. So far as the record shows, this was the first time any question was raised about the proper interpretation of the 1956 amendment to Code § 58-638.

The rule of practical construction—that weight will be given to the interpretation placed upon a statute by the persons who are charged with its administration—is applicable only where the interpretation of the statute is doubtful or the arguments for and against a given interpretation are evenly balanced. See *City of Richmond* v. *Drewry-Hughes Co.*, 122 Va. 178, 193, 94 S.E. 989, 992 (1918). We find that resort to practical construction is unnecessary in this case.

Moreover, the administrative interpretations relied upon by the Commonwealth and Greyhound, respectively, point in opposite directions. If we must presume that the actions of the officials in assessing Greyhound's gross receipts road taxes on the basis of gross transportation receipts during the years 1947 and 1948, and from 1957 through the first quarter of 1964, were conscious and amounted to a practical construction, we are faced with the contrary administrative interpretation in the second quarter of 1964.

In our opinion the Commission properly interpreted the meaning of the language of Code § 58-638, as amended in 1956, and the orders refunding the overpaid taxes were correct.

*Affirmed.*