## Richmond

FREDERICK A. CARTER v. CITY OF NORFOLK.

March 7, 1966.

Record No. 6209.

Present, All the Justices.

*Samuel Goldblatt* and *Alan S. Mirman (Goldblatt & Lipkin,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the defendant in error.

GORDON, J., delivered the opinion of the court.

■ Carter attacks an act of the General Assembly on constitutional grounds. The act purports to impose costs; but in Carter's view it imposes a tax in violation of the Constitution of Virginia.

The act, codified as § 14.1-200.1, reads:

> *"An Act to impose and provide for the collection and disposition of certain costs in convictions upon crimes and offenses which are reportable to the Division of Motor Vehicles.*
>
> "Approved March 31, 1964
>
> "Be is enacted by the General Assembly of Virginia:
>
> "1. § 1. Whenever a person is convicted of a violation of any provision of a State law or local ordinance and such conviction is required to be reported to the Division of Motor Vehicles there shall be added to all other costs, penalties and fines assessed or assessable against the defendant, the sum of five dollars to partially defray the costs of administration of such Division. All sums so assessed shall be collectible as other costs due the State and shall be paid into the State treasury and shall constitute a 'new source of revenue' for highway purposes as that term is defined in §§ 33-32 and 33-48.1 of the Code of Virginia.
>
> "§ 2. This act shall apply to offenses occurring on and after July one, nineteen hundred sixty-four." (Va. Acts of Assembly 1964, ch. 289, at 505, Va. Code Ann. § 14.1-200.1 (Repl. vol. 1964)).

According to the agreed statement of facts and other incidents of trial, Carter was tried by the corporation court, on appeal from a municipal court, "for the violation of Section 29.32 (speeding) of the Code of the City of Norfolk". He was convicted and fined $10.00 and "[i]n addition thereto, . . . [the court] assessed the defendant [Carter] with $9.50 'costs' after a statement of costs had been made up by the Clerk of the Court in accordance with the statute made and provided, which 'costs' included the sum of $5.00 prescribed by Section 14.1-200.1 Code of Virginia of 1950. . ."

Admittedly, Carter was convicted of a violation that must be re-

ported to the Division of Motor Vehicles (Va. Code Ann. § 46.1-413 (Supp. 1964)), and the clerk was required by Code § 14.1-200.1 to include the $5.00 assessment in the statement of costs. So the assessment was proper unless Code § 14.1-200.1 must give way because of a constitutional inhibition.

Several basic principles light the way to our decision in this case. Unlike the Congress of the United States, the General Assembly of Virginia functions under no grant of power. The General Assembly is the supreme law-making body within the State of Virginia, and it can enact any law not prohibited by the Constitution of the United States or the Constitution of Virginia. All laws enacted by the General Assembly are presumed to be constitutional, and the assailing party has the burden of proving the claimed invalidity of any law. *Peery* v. *Board of Funeral Directors,* 203 Va. 161, 123 S.E.2d 94 (1961); *Harrison* v. *Day,* 200 Va. 764, 107 S.E.2d 594 (1959).

It has not been suggested that the enactment of Code § 14.1-200.1 is prohibited by the Constitution of the United States. The scope of our inquiry is whether the General Assembly exceeded its power because of a limitation imposed by the Constitution of Virginia. We are concerned, moreover, with the constitutionality, and not with the wisdom, of the legislation. *Harrison* v. *Day,* 202 Va. 967, 121 S.E.2d 615 (1961).

The Constitution of Virginia is silent on the subject of costs. It follows, in view of the principles already mentioned, that the General Assembly has the authority to provide for the assessment of costs.

█ The Constitution does set forth, however, certain limitations and conditions upon the authority of the General Assembly to levy taxes. Carter stakes almost his entire case on acceptance of the argument that Code § 14.1-200.1 imposes a tax in violation of the Constitution of Virginia;[1] and the Commonwealth responds with the argument that Code § 14.1-200.1 imposes costs, not a tax.[2]

In essence, Carter contends that Code § 14.1-200.1 imposes a tax, not costs, because (1) the General Assembly intended, by enacting the section, to impose a tax, and (2) the assessments provided for

(1) Carter does not confine his attack on Code § 14.1-200.1 to the argument that it imposes an unconstitutional tax. He makes a sweeping indictment, contending that Code § 14.1-200.1 violates sections 39, 50, 52, 63 (3) and (5), and 186 of the Constitution of Virginia. But only the argument that Code § 14.1-200.1 imposes not costs, but rather an unconstitutional tax, warrants discussion.

(2) In view of our disposition of the case, we need not decide whether Code § 14.1-200.1 would be unconstitutional if it imposed a tax.

under the section are outside the legitimate bounds of costs and, consequently, are in legal contemplation assessments of taxes.

In dealing with Carter's first contention, we should first determine the legislative intent as evidenced by the language of the act codified as § 14.1-200.1.

The purpose of the act, as stated in the title, is "to impose and provide for the collection and disposition of certain costs". Section 1 of the act provides that all sums assessed thereunder "shall be collectible as other costs due the State". From the face of the act, we find a clear legislative intent to provide for the assessment of costs.

We do not agree with Carter's contention that intent to impose a tax is evidenced by the words of the act directing that the collected costs "shall be paid into the State Treasury and shall constitute a 'new source of revenue' for highway purposes". These words provide for the disposition of sums collected as costs; they have no bearing on the question whether the intent of Code § 14.1-200.1 was to impose costs or taxes. It is equally necessary for the General Assembly to provide for the disposition of moneys received as costs, as to provide for the disposition of moneys received as tax revenue.

Carter argues that intent to levy a tax is shown by the legislative history of the act. The Governor, in his address to the General Assembly on January 8, 1964, spoke of the need for additional funds for better highways and recommended "that automobile license fees be increased, a title tax be imposed on all motor vehicles and trailers registered in Virginia, and that there be an increase in the fee for operators' permit[s]". (Senate Document No. 1, Regular Session 1964) Shortly thereafter, bills were introduced providing for increased fees for automobile licenses and operators' permits and for a tax, commonly referred to as a "titling tax", on all motor vehicles and trailers registered in the state. Substantial opposition to the titling tax developed, and it was not enacted into law. A new bill was introduced that became Code § 14.1-200.1.

From this history, Carter would have us conclude that Code § 14.1-200.1 provides for the assessment of taxes. He proceeds from the premise that Code § 14.1-200.1 was enacted as a substitute for the titling tax, which was designed to provide funds for better highways, to the conclusion that Code § 14.1-200.1 imposes a tax to provide funds for the same purpose.

Nevertheless, we are bound to interpret and give effect to acts of the General Assembly as written. The legislative history can serve

here to show only the underlying legislative motive; it cannot contradict the language of the act. As already pointed out, the act clearly provides for the imposition of costs, a word that appears in the title and in the body of the act. The word "tax" does not appear in the act. The language of the act being unambiguous, there is no occasion to resort to legislative history to explain its meaning. *Peery v. Board of Funeral Directors, supra;* see *Commonwealth v. Greyhound Lines, Inc.,* 206 Va. 550, 145 S.E.2d 206 (1965).

Carter's second contention is that costs must be limited to expenses incurred in judicial proceedings. Further, he denies the authority of the General Assembly to include fees for commonwealth attorneys, clerks and sergeants as items of cost. Such fees, Carter contends, are general expenses of the administration of justice and cannot be taxed as costs. He cites *Anglea v. Commonwealth,* 51 Va. (10 Gratt.) 696 (1853) and *Finch v. Commonwealth,* 55 Va. (14 Gratt.) 643 (1858), to support his position. Neither case, however, lends support.[3]

The question in *Anglea v. Commonwealth, supra,* was whether fees of the attorney for the commonwealth, the clerk and the sergeant could be taxed as costs under an act reading "in every criminal case, the clerk of the court in which the accused is convicted, shall make up a statement of all expenses incident to the prosecution, including those which are incident to any proceeding preliminary to conviction in another court, which are payable out of the treasury" (51 Va. (10 Gratt.) at 704). The holding that the fees could not be included as costs was based solely upon the court's interpretation of the intent of the act.

No question was raised in *Anglea* concerning the authority of the General Assembly to include the fees as costs, nor does the opinion intimate that the General Assembly lacked this authority. In fact, the court had held in an earlier case involving a different act, *Commonwealth v. Flint,* 4 Va. (2 Va. Cas.) 159 (1819), "In taxing the costs upon the said judgment, the Clerk should have taxed the Attorney prosecuting for the Commonwealth, a fee of ten dollars." (4 Va. (2 Va. Cas.) at 160).

---

(3) Cf. *Kincaid v. Commonwealth,* 200 Va. 341, 105 S.E.2d 846 (1958), holding that the Constitution of Virginia does not prohibit the assessment of jury costs against a convicted defendant, in connection with Carter's argument that costs cannot include items falling within the category of general expenses of the administration of justice. *Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S. Ct. 518, 15 L. ed. 2d 447 (1966), involving the due process of the Federal constitution, is not to the contrary.

Similarly, *Finch* v. *Commonwealth, supra,* and a majority of the cases from other jurisdictions cited by Carter, did not involve legislative authority respecting assessments of costs, but interpretation of the intent of acts providing for assessments of costs.[4]

Carter cites only two cases involving the constitutional question of legislative authority respecting costs, *Ex parte Coffelt,* 93 Okla. Crim. 343, 228 P.2d 199 (1951), and *Ex parte Miller,* 97 Okla. Crim. 351, 263 P.2d 522 (1953). The act held unconstitutional in *Coffelt* provided for the assessment of costs in criminal cases for the state parole fund. The court found the costs to have no true relation to the expense of prosecution and, consequently, to be a disguised tax collectible by the judiciary, contravening the provisions of the state constitution guaranteeing the opening of the courts to all persons and the separation of the judicial and executive branches. Following *Coffelt,* the court in *Miller* struck down an act providing for the assessment of costs for the pension and retirement system for policemen.

In *Ex parte Carson,* 143 Tex. Crim. 498, 159 S.W.2d 126 (1942), assessments of costs for the establishment and maintenance of a law library were held invalid, because they were unrelated to the expense of prosecution and were imposed in only two counties of the state. *Contra, Marquardt* v. *Fisher,* 135 Ore. 256, 295 Pac. 499 (1931).

As noted, the courts in *Ex parte Coffelt, supra, Ex parte Miller, supra* and *Ex parte Carson, supra,* based the holdings of unconstitutionality upon findings that the costs imposed by the acts under consideration had no true relation to the expenses of the prosecutions. These cases do not support Carter's position, if the costs assessed against him under Code § 14.1-200.1 were directly related to the expense incurred by the State in prosecuting him.

Costs are assessed under the Code § 14.1-200.1 "to partially defray the costs of administration of such Division [the Division of Motor Vehicles]". We should consider, then, whether Carter's conviction for a traffic offense can be properly related to the expenses incurred by the State of Virginia for the administration of the Division of Motor Vehicles.

Under Code § 46.1-413,[5] clerks of courts are required to forward

(4) See Annot., 65 A.L.R.2d 854 (1959), for cases dealing with assessments of costs.

(5) Va. Code Ann. § 46.1-413 (Supp. 1964).

abstracts of records reflecting convictions for traffic offenses to the Commissioner of the Division of Motor Vehicles, and the Commissioner is required to maintain these records in the offices of the Division. The maintenance of these records is necessary for the discharge of the responsibilities imposed by law on the Commissioner—as examples, his responsibilities under the Operators' and Chauffeurs' License Act[6] and the Motor Vehicles Safety Responsibility Act,[7] particularly his responsibility for issuing and revoking licenses.

The maintenance of such records is necessary also to supply evidence made admissible under Code § 19.1-186.2.[8] That section permits the court or jury to consider the evidence of the prior traffic record of the accused in determining the fine or sentence to be imposed for traffic offenses.

The record-keeping and reporting expenses of the Division of Motor Vehicles are, therefore, directly related to convictions for traffic offenses.

Code § 14.1-200.1 reflects the finding of the General Assembly that the sum of $5.00 is needed to defray, or to defray partially, the expense incurred by the State as a result of a conviction for a traffic offense. This finding must be accepted, since Carter has brought forth no evidence tending to show that it is arbitrary or unreasonable. See *Peery* v. *Board of Funeral Directors, supra.*

Code § 14.1-200.1 specifies that the costs collected thereunder shall be paid into the State treasury. The State is thus reimbursed for expenses incurred by one of its agencies or divisions, the Division of Motor Vehicles. This fact is not altered by the further direction of Code § 14.1-200.1 that the collected costs "shall constitute a 'new source of revenue' for highway purposes". This direction in no way contradicts the fact that the State, which suffered the expense, has been reimbursed.[9]

The costs collected under Code § 14.1-200.1 therefore reimburse the State for expenses incurred by it as a result of prosecutions for

---

(6) Va. Code Ann. §§ 46.1-348, *et seq.* (Repl. vol. 1958).

(7) Va. Code Ann. §§ 46.1-388, *et seq.* (Repl. vol. 1958).

(8) Va. Code Ann. § 19.1-186.2 (Supp. 1964).

(9) As pointed out in the brief for the Commonwealth, appropriations for the Department of Motor Vehicles are payable out of the State highway maintenance and construction fund and, therefore, the General Assembly had reason to earmark the collected costs for highway purposes so that they would be added to the State highway maintenance and construction fund, instead of the general fund. (See Items 101 and 102 of the 1964 Appropriation Act; Va. Acts of Assembly 1964, ch. 658, at 1013-1014.) We are not concerned, however, with the disposition of the collected costs after they are received in the State treasury.

traffic offenses. Since these costs have a true and direct relationship to the prosecutions, the cases from other jurisdictions holding costs statutes invalid are clearly distinguishable.[10]

No sound reason has been advanced for holding Code § 14.1-200.1 constitutionally infirm. Accordingly, we hold that the General Assembly had the authority to enact Code § 14.1-200.1, and that the assessments made pursuant to its provisions can be legally collected as costs due the Commonwealth.

*Affirmed.*

---

(10) We need not decide whether the Constitution of Virginia would require the same result as was reached in *Ex parte Coffelt, supra, Ex parte Miller, supra,* and *Ex parte Carson, supra,* if the statutes there involved were before us; nor should this opinion be interpreted as indicating approval or disapproval of the result reached in those cases.