COLE, Judge.
Tried by the court sitting without a jury, appellant, Carla Jean Ohree, was convicted of two counts of grand larceny by welfare fraud. On appeal, Ohree argues that (1) the Commonwealth’s, recoupment from a convicted defendant of the costs incurred in providing a jury trial unconstitutionally burdens the defendant’s right to a jury trial as provided in the Consti *303 tution of the United States, (2) the Commonwealth’s recoupment from an indigent defendant of the costs incurred in providing a jury and court-appointed counsel, without a preliminary finding that the defendant could or would likely be able to pay the costs, violates the Constitution of the United States, (3) Ohree’s waiver of her right to a jury trial was involuntary because it was made solely to avoid the imposition of jury costs, and (4) requiring Ohree to pay a clerk’s fee, Commonwealth’s attorney fee, recording fee, courthouse maintenance fee, drug enforcement jurisdiction fee, and a fee for the Criminal Injuries Compensation Fund violates the due process and equal protection clauses of the Constitution of Virginia. Finding no error, we affirm Ohree’s convictions.
Facts
Following Ohree’s indictment upon two counts of grand larceny by welfare fraud, counsel was appointed to represent her. Before trial, appellant filed a “Motion for Waiver of Jury Fee and Court Appointed Attorney Fees for Indigent Defendant.” In her motion, Ohree alleged that she was indigent, that she was “desirous of contesting the charge,” but that she was “chilled in her decision as to whether to elect trial by judge or trial by jury by her inability to pay any fee for a jury should she be convicted.” The trial court refused to waive the jury and court-appointed counsel fees. Ohree objected to the court’s ruling.
At the beginning of Ohree’s trial, defense counsel again raised his objection regarding the assessment of fees for a jury and a court-appointed attorney. After the trial court overruled the objection, Ohree pleaded not guilty to both charges. When the judge asked Ohree whether she “wish[ed] to be tried by the Court or by a jury,” defense counsel interjected, “If I might, Your Honor, we’ve already made an objection to that. We’re agreeing to be tried by the Court.”
The Commonwealth presented evidence that the Aid to Families of Dependent Children program had overpaid Ohree in the amount of $873. The evidence demonstrated that Ohree had also been overpaid $879 in food stamps. The judge *304 found Ohree guilty of both charges and sentenced her to two jail terms of twelve months each. The sentences were suspended upon certain conditions, including that Ohree “pay and the Commonwealth recover costs in the total amount of $409.00.”
Two days after the entry of the sentencing order, Ohree filed an “Objection to Assessment of Costs and Motion to Set Aside.” Ohree alleged that she was indigent and without funds to pay the costs of $409 as required by the sentencing order. She argued that “some of the items listed as ‘costs’ are not directly related to the expense of her prosecution and function as an additional punishment in excess of that provided by statute.” Ohree also filed a “Motion to Stay Imposition of Punishment, Costs and Restitution Pending Appeal.” The trial court granted her motion to stay the imposition of punishment and the payment of costs pending the appeal. However, the record contains no ruling of the trial court upon Ohree’s objection and motion to set aside the imposition of $409 in costs.
I.
Ohree first contends that by requiring her to pay the costs of a jury had she elected a jury trial and been convicted, the Commonwealth violated her constitutional right to a trial by a jury. Ohree, however, elected to waive a trial by jury, and no costs associated with a jury trial were assessed against her.[1]
Code § 14.1-195.1 provides in part that “[ejvery person summoned as a juror in a civil or criminal case shall be entitled to thirty dollars for each day of attendance upon the court for expenses of travel incident to jury service and other *305 necessary and reasonable costs as the court may direct.” In criminal cases resulting in a conviction, the clerk is directed to “make up a statement of all the expenses incident to the prosecution, ... and execution for the amount of such expenses shall be issued and proceeded with.” Code § 19.2-336. Where a defendant has waived a trial by jury at least ten days before trial, but the Commonwealth or the court refuses to waive a jury, the expenses incident to the prosecution shall not include the cost of the jury. See id.
“If [a] provision ha[s] no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it ... [is] patently unconstitutional.” United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138 (1968). However, “not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.” Doss v. Commonwealth, 23 Va. App. 679, 688, 479 S.E.2d 92, 97 (1996) (quoting Corbitt v. New Jersey, 439 U.S. 212, 218, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978)). For example, “there is no per se rule against encouraging guilty pleas.” Corbitt, 439 U.S. at 218-19, 99 S.Ct. at 497. A legislature, however, cannot needlessly encourage waivers. See Jackson, 390 U.S. at 582, 88 S.Ct. at 1216. “Whatever might be said of [the General Assembly’s] objectives, they cannot be pursued by means that needlessly chill the exercise of basic constitutional rights. The question is not whether the chilling effect is ‘incidental’ rather than intentional; the question is whether that effect is unnecessary and therefore excessive.” Id. (citations omitted).
In Wicks v. City of Charlottesville, 215 Va. 274, 208 S.E.2d 752 (1974), the Supreme Court of Virginia described the purpose of the imposition of costs as follows:
“[T]he character of the obligation ... of a person convicted of [a] crime to the Commonwealth for the costs incident to his prosecution and conviction was discussed and defined to be an exaction, ‘simply for the purpose of reimbursing to the public treasury the precise amount which the conduct of the *306 defendant has rendered it necessary should be expended for the vindication of the public justice of the State and its violated laws. It is money paid, laid out and expended for the purpose of repairing the consequences of the defendant’s wrong.’ ”
Wicks, 215 Va. at 278-79, 208 S.E.2d at 756 (quoting Commonwealth v. McCue’s Ex’rs, 109 Va. 302, 304, 63 S.E. 1066, 1067 (1909)). “ ‘Payment of costs is no part of the sentence of the court, and constitutes no part of the penalty or punishment prescribed for the offense.’ ” Williams v. Commonwealth, 5 Va.App. 514, 521, 365 S.E.2d 340, 344 (1988) (citation omitted).
Had Ohree elected a jury trial and been convicted, permitting the Commonwealth to seek reimbursement for the expense of that jury trial would be a legitimate objective. See Rinaldi v. Yeager, 384 U.S. 305, 309, 86 S.Ct. 1497, 1500, 16 L.Ed.2d 577 (1966) (“We may assume that [the] legislature could validly provide for replenishing ... [the Commonwealth’s] treasury from the pockets of those who have directly benefitted from [the Commonwealth’s] expenditures.”). Moreover, the objective of the Commonwealth — to reimburse the Commonwealth for its costs in providing a jury to a convicted defendant — cannot “be achieved without penalizing those defendants who ... demand [a] jury trial.” Jackson, 390 U.S. at 582, 88 S.Ct. at 1217.
We conclude that the imposition of the cost of providing a jury does not impose an excessive or unnecessary burden upon the exercise of the right of a jury trial under the United States Constitution. See Wicks, 215 Va. at 280, 208 S.E.2d at 757. Moreover, the Supreme Court of Virginia has held that a criminal defendant’s constitutional rights are not violated by including in the expenses incident to the prosecution the cost of the jury if the defendant exercises his or her right to a jury trial. See Kincaid v. Commonwealth, 200 Va. 341, 344, 105 S.E.2d 846, 848 (1958).[2] Accordingly, we find no *307 error in the trial court’s refusal to find that the jury fee was an unconstitutional burden upon Ohree’s right to a jury trial.
II.
Ohree argues on appeal that it “violates the equal protection clause and is constitutionally impermissible” to assess court-related costs against an indigent criminal defendant until the defendant’s financial situation improves and he or she is able to make payment. Ohree’s post-sentencing motion and objection to the $409 in costs contained no allegation of a constitutional violation. Rather, Ohree’s motion asserted her inability to pay, challenged the costs as not directly related to the costs of her prosecution, and argued that the costs constituted a punishment in excess of that permitted by statute. Ohree did not argue in the trial court that the recoupment procedures permitted by Virginia statutes violated her constitutional rights. In fact, the record does not reflect that the trial judge made any ruling at all upon Ohree’s objection to the assessed costs and the motion to set them aside.
“No ruling of the trial court ... will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.” Rule 5A:18.
The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.
Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted).
*308 The Court of Appeals will not consider an argument on appeal which was not presented to the trial court. See Jacques v. Commonwealth, 12 Va.App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18). Rule 5A:18 applies to bar even constitutional claims. See Deal v. Commonwealth, 15 Va.App. 157, 161, 421 S.E.2d 897, 900 (1992). Therefore, Ohree’s argument on appeal is barred by Rule 5A:18 because it was not raised in the trial court. Furthermore, because the trial court never ruled upon Ohree’s objection to the imposition of costs and her motion to set the costs aside, there is no ruling for us to review on appeal. See Fisher v. Commonwealth, 16 Va.App. 447, 454, 431 S.E.2d 886, 890 (1993).
Even on the merits, however, Ohree’s claim fails. If Virginia’s statutory framework regarding the imposition of costs is subject to a constitutional construction “[t]he court is under a duty to give it that construction.” Perkins v.Commonwealth, 12 Va.App. 7, 14, 402 S.E.2d 229, 233 (1991) (citation omitted). In Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the Supreme Court of the United States upheld the validity of an Oregon statute permitting the recoupment of a court-appointed attorney fee where a convicted defendant subsequently acquired the financial ability to pay. The Court noted that unlike invalid statutes which
“had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them,” Oregon’s recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon’s legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship.
Id. at 54, 94 S.Ct. at 2125 (citation omitted).
In Alexander v. Johnson, 742 F.2d 117, 124 (4th Cir.1984), the United States Court of Appeals for the Fourth Circuit set forth the “basic features of a constitutionally acceptable fees *309 reimbursement program____” Under a valid recoupment program,
the entity deciding whether to require repayment must take recognizance of the individual’s resources, the other demands on his own and family’s finances, and the hardships he or his family will endure if repayment is required. The purpose of this inquiry is to assure repayment is not required as long as he remains indigent.
Id. (interpreting North Carolina law).
In every criminal case in Virginia, the clerk of the circuit court in which the accused is found guilty shall, as soon as possible, make up a statement of all the expenses incident to the prosecution provided for by statute and executions for the amount of such expenses shall be issued and proceeded with. On the day of completing the statement, the effect is the same as a judgment in the court in favor of the Commonwealth against the accused. See Code § 19.2-336.
Code § 19.2-354 grants to the trial court the authority to order payment of costs in installments or upon other terms and conditions, such as community service. If the defendant is “unable” to make immediate payment of the costs, the court shall order him or her to pay them in deferred payments or installments. See Code § 19.2-354(A).
In determining whether the defendant is “unable” to make immediate payment and whether an installment plan should be crafted under Code § 19.2-354(A), the judge “may require such defendant to file a petition, under oath, with the court, upon a form provided by the court, setting forth the financial condition of the defendant.” Code § 19.2-355(A). As a part of this petition, the defendant shall provide a proposed plan for the repayment of costs in installments or upon other conditions. See Code § 19.2-355(B).
Should the defendant later default in his or her obligation to make installment or deferred payment of costs, the judge, either upon his or her own motion or upon the motion of the prosecuting attorney, may require the defendant “to show cause why he should not be confined in jail or fined for *310 nonpayment.” Code § 19.2-358(A). The defendant is given the opportunity to demonstrate that the default was “not attributable to an intentional refusal to obey the sentence of the court, or not attributable to a failure on his part to make a good faith effort to obtain the necessary funds for payment.” Code § 19.2-358(B). If it appears that such reasons exist to explain the default, “the court may enter an order allowing the defendant additional time for payment, reducing the amount due or of each installment, or remitting the unpaid portion in whole or in part.” Code § 19.2-358(C).
Although the trial court has jurisdiction to modify, vacate, or suspend its order of 'final judgment for only twenty-one days thereafter, see Rule 1:1, it retains the continuing authority to consider matters pertaining to a defendant’s payment of costs. See Code §§ 19.2-354 and 19.2-358. Sections 19.2-354 and 19.2-358 contain no time limitation beyond which the trial court may not approve or enforce an agreement regarding payment of costs. The trial court possesses the implicit authority to reconsider and modify, upon its own motion or the motion of one of the parties involved, its order concerning the installment or deferred payment of costs. Cf. West v. Commonwealth, 16 Va.App. 679, 685-86, 432 S.E.2d 730, 734 (1993) (where the Commonwealth both noted an interlocutory appeal of a ruling on a motion to suppress and asked the trial court to reconsider its decision, the trial court retained jurisdiction to reconsider its decision even in the absence of express statutory authority permitting the Commonwealth to ask for a reconsideration). Therefore, a defendant who finds that his or her financial condition has prevented or will prevent him or her from complying with a deferral or installment plan ordered under Code § 19.2-354 may petition the trial court for a modification of its prior order embodying that plan. Evidence relevant in the consideration of such a petition would include facts regarding the defendant’s financial position and his or her ability to pay.
Consequently, a person convicted of a crime in the Commonwealth has ample opportunity to demonstrate that he or *311 she should be relieved of the obligation to pay court related costs previously assessed. The defendant can establish that he or she is “unable” to pay the costs within ten days of sentencing and obtain a court approved plan to make deferred or installment payments of the costs pursuant to Code § 19.2-354. If that plan proves unworkable, the defendant may petition the trial court for a modification of the plan. Finally, if the defendant defaults in payment and is ordered to show cause pursuant to Code § 19.2-358, he or she has the opportunity to present evidence concerning his or her ability to pay and obtain either temporary or permanent relief from the obligation to pay costs. Thus, Virginia’s statutory scheme works to enforce the duty of paying costs “only against those who actually become able to meet [the responsibility] without hardship.” Fuller, 417 U.S. at 54, 94 S.Ct. at 2125.
The statutory grant of power to the trial court to order payment of fines, forfeitures, penalties, restitution and costs in deferred payments or installments according to the defendant’s ability to pay implies that the trial judge will act with sound judicial discretion. See Dowell v. Commonwealth, 6 Va.App. 225, 228, 367 S.E.2d 742, 744 (1988). Imposing sanctions on a defendant who fails to pay costs “not attributable to an intentional refusal to obey the sentence of the court” or who is financially unable “to obtain the necessary funds for payment” would be unconstitutional under Fuller. Consequently, imposition of any penalty on a defendant by a trial court under these conditions would constitute an abuse of discretion.
The Virginia Supreme Court has addressed recoupment of attorney fees from an indigent defendant. The same principles apply to other costs of prosecution.
It is entirely proper, and a constitutional requisite, that an indigent defendant be represented by court-appointed counsel. However, we can perceive no valid reason why, if the defendant is convicted, the cost of such representation should not be taxed as a part of the cost of the prosecution, treated as any other debt and collected of the convicted *312 defendant at a later date if and when he becomes able to pay. The Code of Virginia abounds with statutes providing debtors, judgment and otherwise, with exemptions from execution, attachment, garnishment and distress. These statutes afford equal treatment and are adequate to protect any debtor from hardship, and from oppression or overreaching by a creditor. They are not discriminatory and do not penalize any judgment debtor of the Commonwealth.
Wicks, 215 Va. at 279, 208 S.E.2d at 756-57 (citations omitted).
Under the Virginia recoupment statutes, the defendant is given the opportunity at any time to demonstrate that any default was not attributable to any refusal to make a good faith effort to obtain the funds necessary for payment. The trial court may allow the defendant additional time for payment, reduce the amount of the payments on each installment, or remit the unpaid portion in whole or in part. Thus, we find the recoupment statutes constitutional and not a violation of the due process or equal protection clauses of the United States Constitution.
In any event, although Ohree asserted in the trial court that she was indigent and counsel was appointed to represent her, the record contains no affirmative proof that she was unable to pay the costs, in whole or in part, at the time she was sentenced. The trial court stayed the requirement of the payment of costs pending Ohree’s appeal. Accordingly, the record does not reflect that Ohree was determined “unable” to pay the costs pursuant to Code § 19.2-354, that an installment plan or other program was created for her to repay the debt, or that she sought relief from or defaulted upon such a plan. With the case in this posture, we cannot determine how the statutory scheme for recoupment of court-related costs might eventually affect Ohree, much less find the procedure unconstitutional as applied to her.
III.
Although prior to arraignment Ohree requested that the jury fee be waived and contended that the imposition of the *313 jury fee “chilled” her decision regarding whether to request a jury, she never contended in the trial court, as she does on appeal, that her decision to waive a trial by jury was involuntary. Therefore, this issue was waived. See Rule 5A:18.
Moreover, “[t]he record must indicate that the accused made a knowing, intelligent and voluntary waiver of the right to trial by jury.” Wright v. Commonwealth, 4 Va.App. 303, 306, 357 S.E.2d 547, 549 (1987). When asked if she wanted to be tried by the judge or a jury, Ohree consented specifically to a bench trial. As noted above, had Ohree chosen to be tried by a jury, the imposition of the cost of a jury would have been lawful. Ohree’s understanding of the cost of a jury trial and her desire to avoid this expense did not constitute coercion rendering her waiver of a jury involuntary. Cf. Fuller, 417 U.S. at 53, 94 S.Ct. at 2124 (“The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel.”). Accordingly, the record reflects a knowing and voluntary waiver of Ohree’s right to a jury trial.
IV.
Finally, Ohree argues that requiring her to pay a clerk’s fee, Commonwealth’s attorney fee, recording fee, courthouse maintenance fee, drug enforcement jurisdiction fee, and a fee for the Criminal Injuries Compensation Fund violates the equal protection and due process clauses of the Constitution of Virginia.[3] As described above, in the trial court Ohree challenged the imposition of costs solely upon grounds that the costs amounted to an additional punishment in excess of that provided by statute. She raised no constitutional claim. On brief, Ohree concedes that the only issue preserved was *314 whether the costs were related to the prosecution. Furthermore, the trial court never ruled upon the objection raised in Ohree’s post-sentencing objection. Thus, this claim, too, is waived. See Rule 5A:18.
Ohree argues that under Carter v. City of Norfolk, 206 Va. 872,147 S.E.2d 139 (1966), any cost imposed upon her must be related to the expenses incurred by the Commonwealth in prosecuting her. Ohree misconstrues Carter. Addressing Carter’s reliance upon decisions from other states that required costs to be related to the prosecution of the particular defendant charged, see id. at 877, 147 S.E.2d at 143, the Supreme Court stated:
We need not decide whether the Constitution of Virginia would require the same result as was reached in [cases decided under the constitutions of other states] ... if the statutes there involved were before us; nor should this opinion be interpreted as indicating approval or disapproval of the result reached in those cases.
Id. at 879 n. 10,147 S.E.2d at 144 n. 10. The Court declined to rule on that issue because it found that the cost Carter disputed, a charge for the cost of reporting the conviction to the Division of Motor Vehicles, was related to Carter’s conviction. See id. at 879,147 S.E.2d at 144.
In any event, however, several of the fees challenged by Ohree were directly related to her conviction. Ohree complains of six fees: a Commonwealth’s attorney fee, a clerk’s fee, a recording fee, a courthouse maintenance fee, a Criminal Injuries Compensation Fund fee, and a drug enforcement jurisdiction fee.[4] When ruling on the “relatedness” of the fees charged in Carter, the Supreme Court noted that the *315 court clerk was required to send Carter’s conviction record to the Division of Motor Vehicles and that the Commissioner of the Division of Motor Vehicles was required to maintain the records once received. See Carter, 206 Va. at 877-78, 147 S.E.2d at 143. The Court concluded that “[t]he record-keeping and reporting expenses of the Division of Motor Vehicles [we]re, therefore, directly related to convictions for traffic offenses.” Id. at 878,147 S.E.2d at 144.
Similarly, we find that the prosecuting expenses of the Commonwealth, i.e., the Commonwealth’s attorney’s fee, the clerk’s fee, and the recording fee, were directly related to Ohree’s conviction. Because Ohree was directly affected by the services provided by the Commonwealth’s attorney, the court clerk, and the court reporter who recorded the proceedings, these expenses were related to Ohree’s prosecution.
Ohree argues that the Commonwealth cannot assess a fee for services mandated by the Constitution, such as a Commonwealth’s attorney fee, the clerk’s fee, and the recording fee. In Carter, the Supreme Court dismissed the argument “that costs cannot include items falling within the category of general expenses of the administration of justice,” id. at 876 n. 3, 147 S.E.2d at 142 n. 3, finding no Virginia authority to support that position. See id. at 876, 147 S.E.2d at 142. The Court noted “that the Constitution of Virginia does not prohibit the assessment of jury costs against a convicted defendant.” Id. at 876 n. 3, 147 S.E.2d at 142 n. 3 (citing Kincaid, 200 Va. at 344, 105 S.E.2d at 848). The Court rejected Carter’s claim that the Commonwealth was without authority to assess fees for the Commonwealth’s attorney and the clerk. See id. at 879, 147 S.E.2d at 144. We are bound by the prior ruling of the Virginia Supreme Court.
In attacking the fee for the Criminal Injuries Compensation Fund (the Fund), Ohree argues that because the trial judge ordered her to pay restitution, no other compensation was due to the Commonwealth. We disagree. The Fund was created to provide “aid, care and support” to “innocent persons [who] suffer personal physical injury or death as a *316 result of criminal acts.” Code § 19.2-368.1. Although Ohree was convicted of no crime committed against an individual, the Commonwealth and its citizens were injured by her commission of two counts of welfare fraud.
Likewise, the General Assembly’s purpose in charging a fee for courthouse maintenance was presumably to seek reimbursement for Ohree’s use of the courthouse. An individual convicted of a crime against the Commonwealth can be said to have caused the Commonwealth to incur the expense of the prosecution of that individual. Therefore, the imposition of the courthouse maintenance fee upon Ohree, who was convicted of a crime, furthered the legislature’s goal of reimbursement, and the fee was validly applied to Ohree.
For the foregoing reasons, we affirm appellant’s convictions.

Affirmed.

. We assume without deciding that appellant has standing to raise this issue. But see Wicks v. City of Charlottesville, 215 Va. 274, 277-78, 208 S.E.2d 752, 755 (1974) (where defendant would reap no personal benefit from a ruling that a portion of an ordinance was unconstitutional, he has no standing to challenge the statute’s validity as to others); Bouldin v. Commonwealth, 4 Va.App. 166, 169-70, 355 S.E.2d 352, 354 (1987).

. Despite Ohree’s assertion that the Kincaid decision was improperly founded upon Anglea v. Commonwealth, 51 Va. (10 Gratt.) 696, 701 *307 (1853), this Court is without authority to overrule precedent of the Supreme Court. See Minor v. Commonwealth, 16 Va.App. 803, 805, 433 S.E.2d 39, 40 (1993).

. These fees are authorized by Virginia statutes. See Code § 14.1-112 (clerk's fee), § 14.1-121 (Commonwealth’s attorney fee), § 14.1-133.2 (courthouse maintenance fee), § 14.1-134.1 (drug enforcement jurisdiction fee), § 19.2-165 (recording fee), and § 19.2-368.18 (Criminal Injuries Compensation Fund).

. Code § 14.1-134.1, which authorizes the drug enforcement jurisdiction fee, explicitly restricts application of that section to defendants convicted of drug-related offenses. See id. Because no evidence in the record proved that the Commonwealth assessed a drug enforcement jurisdiction fee in this welfare fraud case, we will not assume that the Commonwealth misapplied Code § 14.1-134.1 by charging Ohree for an expense under that section. Therefore, we will not address her claim regarding the drug enforcement jurisdiction fee.