COURT OF APPEALS OF VIRGINIA


Present:   Judge Elder, Senior Judges Annunziata and Clements


ANNABELLE WRIGHT

                                                        MEMORANDUM OPINION[*]
v.        Record No. 2326-08-3                              PER CURIAM
                                                           MARCH 10, 2009
LYNCHBURG DEPARTMENT OF
  SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                              Mosby G. Perrow, III, Judge

              (P. Scott De Bruin; De Bruin & Layne, P.C., on brief), for appellant.

              (Susan L. Hartman, Assistant City Attorney; John Randolph Nelson,
              Guardian *ad litem* for the minor children, on brief), for appellee.


       Annabelle Wright (mother) appeals the trial court's order terminating her parental rights to

her children.  Mother contends that the trial court erred by (1) finding that it was in the children's

best interests to terminate mother's parental rights and (2) finding that the Lynchburg Department of

Social Services (the Department) provided reasonable services to mother.  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                         BACKGROUND

       We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

showed that in 2004, the Department worked with mother and Frederick Wright (father) to address

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

problems with inadequate shelter, cleanliness of the home, unemployment of both parents, poor management of financial resources, health concerns for the children, and developmental delays of the children. In December 2005, the Department became involved again when the home where the parents and children were living had no heat.

In June 2006, there was a child protective services complaint against father and mother.[1] Father and mother shared joint custody of the children with the paternal aunt and uncle. The Department removed the children from the paternal aunt and uncle's house because of filthy and unsafe living conditions. Father and mother did not have an appropriate home for the children, so the children were placed in foster care.

The Department offered numerous services to father and mother. These services included bus passes, regular visitation with the children, a step-parenting class, one-on-one parenting instruction during visitation with the children and follow-up training after the visitation, individual counseling and couples counseling, two psychological evaluations, consumer credit counseling, and a financial freedom class. The parents participated in visitations and cooperated with the services provided, except the financial freedom class. The parents worked with a parenting instructor and therapist to improve their parenting skills.

While the children were in foster care, father and mother had numerous financial and housing problems. Their electricity and water were turned off twice, and at the time of the circuit court hearing, they had received termination notices for electricity and water. Father and mother lived in different houses while the children were in foster care. The houses were in complete disrepair and were unsafe, unstable, and dirty. Father had an arrangement with the landlord that he would fix the house in exchange for free rent. The Department offered housing assistance, but father wanted to continue to work for the landlord in exchange for free rent.

---

[1] The complaint was later determined to be unfounded.

All of the children had special physical and emotional needs and required special care. The children improved since they came into foster care.

A clinical psychologist evaluated mother on two occasions while the children were in foster care. During that time period, mother's depression decreased, but she remained emotionally unstable and had a possible borderline personality. Mother had mental and intellectual limitations. At both evaluations, mother described her relationships with her children as "highly problematic or dysfunctional." Despite the intervention of a therapist and parenting instruction between the two evaluations, the clinical psychologist found that "the Wrights' abilities to address hypothetical child rearing problems actually appears diminished at the second evaluation as compared to the first." The clinical psychologist concluded that "the prognosis was not good . . . [and] services would not make a substantial difference in their ability to handle parenting."

The parents' therapist also testified that he had concerns about the parents' housing, transportation, and insurance issues. He did not feel that the parents were ready or able to take over parenting responsibilities.

On February 29, 2008, the juvenile and domestic relations district court terminated mother's parental rights. Mother appealed, and on August 25, 2008, the circuit court entered an order terminating mother's parental rights.[2] The trial court found that "there is clear and convincing evidence that the neglect sustained or suffered by these children presents a serious and substantial threat to their health and development and it is not reasonably likely . . . that those conditions could be corrected or eliminated to allow the children to return to their parents." The trial court found that the parents were incapable of caring for the children's numerous special needs. Mother timely noted this appeal.

---

[2] Both courts also terminated father's parental rights.

ANALYSIS

Best interests of the children

Mother argues that the trial court erred when it found that it was in the children's best interests to terminate mother's parental rights. Mother contends that the trial court failed to recognize the loving bond between her and the children. She also asserts that there was no physical or sexual abuse. Mother argues that the court should have kept the family together as opposed to terminating her parental rights.

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Id. at 128, 409 S.E.2d at 463.

Here, the trial court stated that "there's no evidence really that the parents don't love these children but there's evidence of an inability to manage and care for these children because of their special needs." All of the children had special needs that required special attention, including numerous appointments with therapists and doctors. However, the parents were unable to organize themselves and schedule and plan for the children's appointments. For example, when the parents' therapist asked the parents to maintain a calendar to track the doctors' appointments and school events, the parents could not do so. The clinical psychologist concluded that because of the parents' "limited intellectual resources" and "significant personality disorders," their "prognosis was not good." He was "not optimistic" that "either parent could bring themselves to the point where they could provide minimally acceptable parenting or child care . . . where they would in fact . . . be able to adequately take care of the safety and well being of their children."

Another major concern was the parents' housing situation. The Department had previously been involved with the family because of concerns about the living situation. The parents had financial problems that twice led to the termination of electricity and water, and they

received another termination notice while the matter was pending before the circuit court. The house was unsafe, dirty, and in total disrepair. Even though the Department offered housing assistance, the parents refused and continued to live in the dilapidated house.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The children had been in foster care for over two years before the circuit court entered the order terminating mother's parental rights. Despite the intervention of a therapist and parenting instructor, mother was unable to meet the Department's requirements. The evidence proved that it was in the children's best interests to terminate mother's parental rights.

### Reasonable services

Mother argues that the trial court erred in finding that the Department provided reasonable services to her. Mother did not make this objection or argument at the trial level.

Rule 5A:18 states that "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." In Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998), this Court held that it "will not consider an argument on appeal which was not presented to the trial court." Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

<u>Edwards v. Commonwealth</u>, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

Moreover, the record does not reflect any reason to invoke the good cause or ends of justice

exceptions to Rule 5A:18.

CONCLUSION

There was no error in finding that it was in the best interests of the children to terminate

mother's parental rights.  Rule 5A:18 bars our consideration of whether the Department provided

reasonable services to the mother.  Therefore, the ruling of the trial court is summarily affirmed.

Rule 5A:27.

<u>Affirmed.</u>