COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Millette and Senior Judge Coleman


KAREN STAPLES

MEMORANDUM OPINION*

v.      Record No. 2147-07-1                          PER CURIAM
                                                      MARCH 11, 2008

CHESAPEAKE DEPARTMENT
  OF HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Walter J. Ford, Judge

(Elizabeth R. Gold, on briefs), for appellant.  Appellant submitting
on briefs.

(John Oliver, Deputy City Attorney; Cheryl Footman-Banks,
Guardian *ad litem* for the minor child, on brief), for appellee.
Appellee and Guardian *ad litem* submitting on brief.


Karen Staples, mother, appeals the trial court's decision, dated August 23, 2007, terminating

her parental rights to her child pursuant to Code § 16.1-283.  On appeal, she contends (1) the trial

court erred by considering the petition for termination filed by the Chesapeake Department of

Human Services (DHS) because the petition did not designate the specific subsection of the statute

under which termination was sought, and (2) the evidence was insufficient to support the

termination of her parental rights.  Upon reviewing the record and briefs of the parties, we affirm

the trial court's decision.

Background

We review the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). So viewed, the evidence proved that Staples's child was born on July 20, 2001. DHS became involved with Staples and her child after receiving a report in March 2003 that the child was being neglected by Staples due to Staples's drug use. A child protective services worker went to the home and found the home in total disarray and with the curtains closed and the house dark although it was mid-day. Staples denied drug use and made multiple excuses for why she could not take a drug test. After the worker made arrangements for Staples to take a drug test, the worker found that Staples had taken her child and gone to North Carolina. The worker requested and received an emergency removal order awarding DHS temporary custody of the child on April 21, 2003. At a hearing on May 28, 2003, the Chesapeake Juvenile and Domestic Relations District Court found that the child was neglected and awarded custody of the child to DHS.

During the summer of 2003, Staples participated in substance abuse counseling, individual therapy, and in-home services. Staples regularly visited her child and cooperated in regular drug screens. The child was transitioned back to Staples's home and, in September 2003, legal and physical custody was returned to Staples.

Within six months, DHS received a new report of Staples's drug use and her neglect of her child. In response to this report, a child protective services worker went to the home in February 2004 and found the home in a state of disarray with clothing, furniture, and junk randomly scattered throughout the home and dirty dishes stacked in the sink. The curtains were closed, and the house was dark. Staples and her child were sleeping in the den because their bedrooms were full of clothes and they could not sleep there. Staples denied using drugs. The worker advised Staples that the living conditions were unacceptable. Staples cleaned the bedrooms so she and her child could sleep in their own bedrooms. Thereafter, on March 30, 2004, DHS received a report that Staples was passed out in her home and the neighbors had been unable to arouse her. The child was at the

home in Staples's care at the time. Paramedics were called and when Staples was awakened, her behavior was consistent with drug use as evidenced by her stumbling and incoherent speech. A child protective services worker responded to the home and asked Staples to take a drug test. Staples complied, and the test result was negative.

On April 29, 2004, the worker returned to Staples's home and found that the conditions had deteriorated again in terms of cleanliness and organization. The house was dark, and clothes were scattered throughout the house. The worker sent Staples for a drug screen at a facility that provided more scrutiny and supervision of clients providing urine samples. The facility workers found that Staples tried to fill her urine specimen bottle with urine she brought with her to the facility, and noted that Staples gave them a "cold sample" that clearly did not just come from her body. Staples was unable to provide a sample for valid testing. The worker informed Staples that, considering the home's condition, DHS was treating the unsuccessful urine test as a positive drug screen. Staples agreed to return to substance abuse treatment and agreed to have her child evaluated for special education due to the child's unintelligible speech.

DHS requested a protective order based on Staples's "history of avoiding compliance with services and supervision" and her continued denial of a drug abuse problem. At the May 12, 2004 hearing, Staples did not admit to any of DHS's allegations, but agreed to the terms of the protective order that she stop illegal drug use, participate in substance abuse treatment, obtain educational testing for her child, cooperate with in-home services and supervision, and that she not travel or move without DHS's prior approval. At a June 10, 2004 hearing, Staples noted she was in treatment and was drug free, she had cleaned her home, and had taken her child in for testing. DHS acknowledged that Staples had been compliant with services, but still had concerns because of Staples's history of allowing the conditions in her home to deteriorate when supervision ended and of her use of sophisticated measures to avoid detection of drug use. DHS asked that supervision be

provided for an extended period of time, to which Staples agreed. The court entered a final order directing Staples to comply with the previous protective provisions and ordered an additional eight months of supervision.

On August 3, 2004, DHS received a report that Staples had tested positive for cocaine. When the worker confronted Staples, Staples admitted using "one line" of cocaine with friends. Because the conditions of Staples's home were acceptable, DHS did not try to remove the child but did file a contempt motion against Staples for violation of the court order.

On September 7, 2004, Staples again tested positive for cocaine, the same day that she told her drug counselor that she was not using drugs. Staples had been missing her scheduled drug counseling sessions during this time. The worker went to Staples's home late on the morning of September 20, 2004, and found Staples and her child still in their pajamas. The worker confronted Staples about this positive drug test. Staples claimed she rubbed cocaine on her sore gums. DHS reviewed the matter but did not decide whether to remove the child from Staples's custody. Staples continued with individual treatment and attended Narcotics Anonymous meetings.

On October 26, 2004, Staples again tested positive for cocaine use. On October 28, 2004, Staples told the worker that she remained drug free. DHS filed a petition alleging Staples's child was neglected and asked the court to enter an emergency removal order giving DHS temporary custody of the child. The court agreed and entered this order on November 3, 2004. At the hearing on November 9, 2004, Staples acknowledged using drugs, but claimed the last positive drug screen was "caused" by a drug dealer seeking revenge against her. Staples also acknowledged that she was unemployed, had no health insurance, and was pregnant. DHS noted the continuous relapses and stated that when Staples is under the influence of drugs, she is unable to attend to her own needs or her child's needs. DHS also stated the concern that Staples and her child were vulnerable to harm from people associated with her prior drug use activities. The court adjudged the child to be

neglected, continued temporary legal custody of the child with DHS, and ordered Staples into services and supervision.

The initial foster care plan had a goal of return home. The plan identified Staples's ongoing drug use and resulting neglect of her child and home and her lack of employment as key issues. On January 28, 2005, Staples acknowledged that she was unable to regain custody and noted that medical complications from her terminated pregnancy had prevented her from actively participating in services. Staples requested expanded visitation, which the court allowed by order entered on May 6, 2005. During the spring of 2005, Staples complied with services and supervision, and continued substance abuse counseling, participated in an intensive outpatient treatment program, and had a psychiatric evaluation and review of her medication. Staples's drug tests were negative, she completed her outpatient treatment program, cleaned her home, and found employment.

Thereafter, the worker learned that Staples's home phone had been disconnected and that the stove did not work. DHS continued working with Staples. She paid her utility bills before the court review in July 2005, maintained employment, and her visitations with her child went well. Despite Staples missing some substance abuse counseling sessions in July and August 2005, DHS found the situation sufficiently stable to place the child back into Staples's custody.

The child returned to Staples's custody in October 2005. In-home services were provided to assist Staples with budgeting and parenting issues. Staples missed more appointments with her substance abuse counselor. In December 2005, a worker went to Staples's home, and found that her gas had been cut off and that Staples had a balance of $706.18 on her electric bill and an unpaid water bill of over $150. Staples's bills accumulated despite having no mortgage or car payments, and despite having two part-time jobs and receiving child support payments. Staples denied having financial problems. That same month, the worker returned to Staples's home and found no heat in the home. Staples appeared disheveled and had dark circles under her eyes. The worker asked her

to submit to a drug test but Staples refused. The child was removed from Staples's home. DHS requested to change the foster care plan goal to adoption. Because some of Staples's relatives asked to be considered as placement for the child, the court asked DHS to submit a new plan and noted that it was premature to determine the most appropriate permanent goal for the child. DHS continued offering services to Staples.

DHS submitted a new foster care plan with the goal of adoption in February 2006. On March 17, 2006, the court reviewed and approved this plan. Staples's relatives appeared and said they could not offer placement to the child. DHS continued providing Staples visitation with her child and monitoring Staples's participation in substance abuse treatment.

On April 14, 2006, Staples again tested positive for cocaine. Staples submitted to another drug test on May 1, 2006 and acted "weird" when told the test would be monitored. Initially, Staples denied drug use but then admitted she had relapsed and used cocaine.

On May 23, 2006, the foster care worker filed a petition seeking termination of Staples's residual parental rights, and the court terminated Staples's parental rights on August 18, 2006. The court allowed Staples to continue having visitation, and during the next nine months Staples had five negative drug screens. Meanwhile, Staples appealed to the Circuit Court of the City of Chesapeake and that court ordered that Staples's parental rights be terminated on August 23, 2007.

Since March 2005, the child has been living with a family who is willing to adopt the child. The child is thriving and excelling in school, and has bonded with the family.

Analysis

I.

At trial, appellant never raised her claim that the court erred by considering the petition for termination because the petition did not specify under which subsection of Code § 16.1-283 DHS was proceeding. "The Court of Appeals will not consider an argument on appeal which

was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

## II.

When considering termination of a parent's residual rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). "The trial court's judgment, when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The trial court quoted Code § 16.1-283(C)(2) in its order terminating Staples's parental rights. Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence, that (1) the termination is in the best interests of the child, (2) "reasonable and appropriate" services have been offered to help the parent "substantially remedy the conditions which led to or required continuation of the child's foster care placement," and (3) despite these services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 329, 387 S.E.2d at 796).

DHS proved by clear and convincing evidence that termination of Staples's parental rights was in her child's best interests. Staples's continuous use of cocaine led to her inability to maintain a stable and safe home for her child. Although Staples remedied the situation several times, she was unable to continue these remedied conditions for more than a few months before relapsing, despite receiving a variety of ongoing services. In addition, Staples was untruthful about her problems and routinely denied the problems, at least initially, to her worker. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that DHS proved by clear and convincing evidence that Staples's parental rights should be terminated pursuant to Code § 16.1-283(C)(2) and that the termination of Staples's parental rights was in her child's best interest. Accordingly, we affirm the trial court's judgment.

Affirmed.