COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, Huff and Senior Judge Haley

ZASKECHA WASHINGTON

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0916-12-2                              PER CURIAM
                                                       JANUARY 15, 2013
FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

        (Robert J. Barlow; Marc R. Thomas; Law Offices of Robert J.
        Barlow, PLLC, on briefs), for appellant.

        (Joseph A. Vance, IV; Sonya B. Costanzo, Guardian *ad litem* for the
        infant children, on brief), for appellee.


        Zaskecha Washington appeals the termination of her parental rights to her four children,

A.W., I.W., Y.L., and J.L., pursuant to Code § 16.1-283(C)(2).[1]  Washington argues the

Fredericksburg Department of Social Services (DSS) failed to provide services to help with the goal

of returning the children to her and she substantially complied with the conditions in the foster care

plan.  Washington also argues the trial judge misapplied the best interests of the child standard of

Code § 16.1-283(C).  Upon reviewing the record and briefs of the parties, we conclude this appeal is

without merit.  Accordingly, we summarily affirm the decision of the circuit court.  See Rule 5A:27.

        We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of Human

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] A.W. was born in 1999, I.W. was born in 2002, J.L. was born in 2004, and Y.L. was born
in 2006.

Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that in 2006, DSS became concerned that Washington's children were not properly clothed and fed. After a psychological and a substance abuse evaluation, Washington was diagnosed with chronic depression. Medication and personal therapy were recommended as treatment. During the following eighteen months, Washington was inconsistent in remedying her depression and taking advantage of the parenting services offered by DSS. On February 7, 2008, Washington's children were found to be in need of services and DSS took custody of them. In the March 2008 service plan, the goal was return to home. The foster care plan required Washington to take parenting classes, attend therapy, find employment, and participate in a psychological evaluation. DSS initiated monthly supervised therapeutic visitation beginning in March 2008, but DSS suspended the visitations in August 2008 after two of the children wandered away from Washington during a July visit. In August 2008, Laurel Purchase, a licensed clinical social worker with Behavior Awareness Center, prepared an attachment and bonding evaluation. DSS restarted supervised therapeutic visitations in January 2009, but the visitations were cancelled the next month and DSS changed the goal in the care plan to adoption. In 2009, the juvenile and domestic relations district court (JDR court) granted the petitions to terminate Washington's parental rights, but the circuit court did not agree and remanded the case to the JDR court.

Natalie Newton, a foster care worker, testified that upon remand, DSS referred Washington to parenting classes and Dr. William Whelan, a clinical psychologist with the Mary Ainsworth Clinic associated with the University of Virginia, conducted a second attachment and bonding evaluation. According to Dr. Whelan's evaluation, it would take a number of years of extreme intervention for Washington to have a fifty-fifty chance to parent the children safely. Newton testified DSS offered therapeutic visitation with the children and ongoing therapy and mental health services for Washington. In May 2010, DSS filed second petitions to terminate Washington's

parental rights and the JDR granted the petitions, but the circuit court did not agree. DSS appealed to this Court, and this Court affirmed the circuit court's decision. See Fredericksburg Dep't of Soc. Servs. v. Washington, No. 2174-10-2 (Va. Ct. App. Aug. 2, 2011).

Purchase testified that in March 2011, DSS asked her to help with therapeutic visitation, to help Washington bond with her children, and to help Washington with parenting skills because the goal was to reunify Washington with her children. DSS assisted with the transportation for the visits. Purchase met with Washington prior to each visit and was present during each visit. The visits occurred once a week with each child individually, but the children "began to do worse and worse." In May 2011, the JDR court ruled that therapeutic visitations were to occur no less than every other week. Purchase testified that beginning in August 2011, visits occurred every other week. Purchase also changed the visitations to more of a play session because the children were not bonding with Washington and were resisting the visits. She changed the visits to play sessions in hope that the children would look forward to the visits and enjoy their time with Washington. The children's therapists and their foster parents testified as to the children's behavior problems after the visits. The therapeutic visits stopped in December 2011. Purchase testified that between March and December 2011, she spent over 225 hours with Washington and her children. There was never a point where Purchase could recommend expanding the visits or permitting Washington unsupervised visits. Since Washington was not bonding during individual visits, Purchase could not recommend that Washington visit with more than one child at a time. Purchase testified that there were times the children's therapists thought that it was unwise for the children to visit with Washington.

Lisa Swanney, the manager at the apartment complex where Washington lived, testified Washington lived in the complex since 2009. Swanney testified Washington lived in a three-bedroom apartment, but when she lost custody of her children, Washington moved to a

one-bedroom apartment. Swanney stated that in order for Washington to move to a three-bedroom apartment, she would have to submit a written application for the larger apartment. The number of larger apartments in the complex was limited, the waiting list for the larger apartments exceeded one year, and Swanney was not currently accepting applications for the larger apartments.

Linda Ann Toppin, a family friend, testified she had a five-bedroom house and the children and Washington could live with her. Toppin testified she completed the foster parenting classes.

Washington testified DSS stopped visitation because the children were having behavioral problems after the visits. Washington testified she attended therapy and parenting classes. Washington claimed she lost her three-bedroom apartment because DSS refused to write a letter to the manager. Due to past experience, Washington believed she could have a three-bedroom apartment at the complex within three weeks. Washington stated she worked the night shift at a store, but she could change her hours if the children were returned to her. Washington agreed that the visits in March 2011 were "rocky." Washington could not remember the last time she saw her therapist because her therapist was "booked solid." Washington admitted that the therapists' recommendations included that A.W. and J.L. cannot be unsupervised with other children and cannot even be with each other unsupervised. To prepare for the return of her children, Washington stated she was taking GED classes, was trying to learn to drive a car, was looking into daycare, and was trying to find sexual abuse counseling for the children. Washington testified she was not asking for the court to return her children to her that day.

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal

unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364

S.E.2d 232, 237 (1988).

DSS sought termination of Washington's parental rights based on Code § 16.1-283(C)(2),

which states that a court may terminate parental rights if that is in the best interests of the child

and

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement notwithstanding the reasonable
> and appropriate efforts of social, medical, mental health or other
> rehabilitative agencies to such end.

Decisions to terminate parental rights under Code § 16.1-283(C)

> hinge not so much on the magnitude of the problem that created
> the original danger to the child, but on the demonstrated failure of
> the parent to make reasonable changes. Considerably more
> "retrospective in nature," subsection C requires the court to
> determine whether the parent has been unwilling or unable to
> remedy the problems during the period in which he [or she] has
> been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (citation

omitted).

"'Reasonable and appropriate' efforts can only be judged with reference to the

circumstances of a particular case. Thus, a court must determine what constitutes reasonable and

appropriate efforts given the facts before the court." Ferguson v. Stafford Cnty. Dep't of Soc.

Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Relying upon C.S. v. Virginia Beach Dep't of Soc. Servs., 41 Va. App. 557, 586 S.E.2d

884 (2003), Washington argues that when examining the "substantial compliance" prong of

Code § 16.1-283(C)(2), what matters is whether the parent made substantial progress, within a

reasonable time, towards compliance with what was asked of the parent by DSS. Washington

argues that she complied or made substantial efforts in all conditions except those over which she had no control. In C.S., the child protective services received a referral regarding young children found alone at a store, a Department of Social Services investigator located the mother at her job, and the investigator accompanied the mother back to her home where the mother's minor children were found alone without supervision. Evidence showed that an older teenage child of the mother was left to babysit the children, but that the teenager left the children unsupervised, unbeknownst to the mother. The children appeared healthy and well fed. The next day, the mother called her supervisor at work to explain what had happened the previous day and to inform her employer that she could not return to work due to problems with the children. Id. at 559, 586 S.E.2d at 885. A Department of Social Services investigator went to the mother's residence later in the day and found that the mother and the children were not home. Believing that the mother had "absconded," the investigator filed a petition for an emergency removal. The mother had not "absconded" with the children, but had taken them to the health department for care and she then went to a relative's residence in a nearby city. Id. at 559-60, 586 S.E.2d at 885. The mother was required to attend therapy, obtain employment, obtain adequate furnishings, attend family therapy, and maintain the children's enrollment in an educational program. Id. at 567-68, 586 S.E.2d at 889. There is no evidence that the mother physically or sexually abused her children, abused alcohol or drugs, or neglected the children as to feeding, clothing, and maintaining their health. Prior to the intervention by the Department of Social Services, the mother had her own apartment, a job, and was not on public assistance. Id. at 566-67, 586 S.E.2d at 888-89. The guardian *ad litem* opposed the termination of the mother's parental rights. Id. at 560 n.2, 586 S.E.2d at 890 n.2.

The circuit court declined to terminate mother's rights as to the three older children, but terminated mother's rights as to the youngest child because the bond developed between child

and the mother was not sufficiently formed.  Id. at 564, 586 S.E.2d at 887.  In reversing the termination of the mother's parental rights, this Court found that the evidence clearly showed that mother substantially remedied, within twelve months, the conditions that led to the child's foster care placement and she complied or made substantial efforts towards remedying each of the conditions except those conditions over which she had no control.  Id. at 570, 586 S.E.2d at 890.  This Court found that the mother did not fully comply with family therapy, but it was not her fault because the Department of Social Services failed to coordinate the therapy between the child's therapists and the mother's therapist.  Id. at 569, 586 S.E.2d at 890.

In C.S., there was no evidence that the mother neglected the children or that anyone in the family suffered from depression until the Department of Social Services became involved with the family.  In this case, DSS became involved with Washington in 2006 because Washington's children were not properly clothed and fed.  Washington was diagnosed with depression and DSS worked with Washington for eighteen months, but Washington was inconsistent with the treatment and DSS removed the children in 2008.  In C.S., the mother substantially remedied, within twelve months, the conditions that led to the child's foster care placement.  In this case, Washington has not substantially remedied the conditions that led to the foster care placement, which occurred in 2008, because Washington did not have adequate housing or daycare, she could not financially provide for her children, and she was inconsistent with medication management and individual counseling.  In C.S., the Department of Social Services failed to coordinate the required family therapy, but in this case DSS provided Washington with help with the visitations and she failed to utilize the therapeutic tools she was taught, which resulted in no progress being made for her to interact with her children unsupervised.  In C.S., the guardian *ad litem* opposed termination, but in this case the guardian *ad litem* supported the termination of Washington's parental rights.

DSS offered in-home services and individual counseling to Washington in 2006, prior to taking custody of the children in February 2008. DSS also offered services to Washington after it took custody of the children. In 2009, after the circuit court denied the petitions to terminate Washington's parental rights, Dr. Whelan conducted an attachment and bonding evaluation. According to Dr. Whelan's evaluation, it would take a number of years of extreme intervention for Washington to have a fifty-fifty chance to parent the children safely. In 2011, DSS hired Purchase to work with Washington regarding Washington's individual visits with the children. Purchase also supervised the visits, and she spent over 225 hours with Washington and the children between March and December 2011. Despite this interaction, Washington was not able to bond with the children and Purchase could not recommend unsupervised visits or recommend that Washington be permitted to visit with more than one child at a time. In August 2011, Purchase changed the therapeutic visits to play sessions because the visits were not going well and the children were resisting the visits. The children's therapists testified that Washington does not have an attachment relationship with the children and she does not have the ability to meet their social and emotional needs. The children's foster parents testified the children had behavioral problems after their visits with Washington and the children's behaviors improved after visits ceased. Washington was not able to take custody of the children on the day of the termination hearing, she did not have adequate housing for the children, she had not made arrangements for daycare, and she had no plans to address the children's behavioral issues.

Although Washington completed parenting classes, obtained psychological evaluations, and attended therapy, at the time of the termination hearing, the children's therapists did not believe she had an attachment to the children and she could not meet their social and emotional needs. Purchase provided intensive one-on-one help to Washington regarding the visits with her children, and after more than 225 hours, Washington was not in a position to be unsupervised with her

children.  Based upon a review of the circumstances in this case, DSS provided reasonable and

appropriate services to Washington and there was clear and convincing evidence that Washington

has been unwilling or unable to remedy the problems during the period in which she was offered

services.  There was sufficient evidence supporting the trial judge's decision to terminate

Washington's parental rights under Code § 16.1-283(C)(2).

Washington argues even if the elements of Code § 16.1-283(C)(2) are met, the

termination must be in the best interests of the children and the trial judge failed to list the factors

he considered in determining that it was in the best interests of the children to terminate her

rights.

"The Court of Appeals will not consider an argument on appeal which was not presented

to the trial court."  Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

See Rule 5A:18.

Washington failed to present this argument to the trial court.[2]  Accordingly, Rule 5A:18

bars our consideration of this issue on appeal.

> Although Rule 5A:18 allows exceptions for good cause or
> to meet the ends of justice, appellant does not argue that we should
> invoke these exceptions.  See e.g., Redman v. Commonwealth, 25
> Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail
> oneself of the exception, a *defendant must affirmatively show* that a
> miscarriage of justice has occurred, not that a miscarriage might

---

[2] In the order terminating her rights, Washington's counsel wrote that Washington objected to the order on the grounds that DSS failed to provide reasonable services and failed to provide court-ordered visitation, which compromised her ability to resume a parental role. Washington did not object based upon the trial judge's failure to state the factors he considered in finding that it was in the best interests of the children to terminate her rights.

have occurred." (emphasis added)).  We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

Accordingly, the trial court's decision is summarily affirmed.

Affirmed.