UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, Decker and Senior Judge Coleman

WILLETTA BLOUNT HOLMES

MEMORANDUM OPINION[*]

v.        Record No. 0282-14-2        PER CURIAM
NOVEMBER 4, 2014

CITY OF RICHMOND DEPARTMENT
 OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Margaret P. Spencer, Judge

(Charles R. Samuels, on brief), for appellant.

(Kate O'Leary; Marc E. Yeaker, Guardian *ad litem* for the minor
children; Office of the City Attorney, on brief), for appellee.

Willetta Blount Holmes, mother, appeals an order terminating her parental rights to her

children, S.H. and E.B., and approving a permanent placement goal of placement with relatives for

her children, Al.B. and Av.B.  Mother argues the trial court erred in:  (1) "holding that the

Richmond Department of Social Services [(RDSS)] complied with its affirmative duty mandated by

. . . Code § 16.1-283(A) to investigate all reasonable options for placement of a child with relatives

as a condition precedent to entering an order terminating the residual parental rights" of mother

regarding S.H. and E.B.; (2) holding that mother failed to substantially remedy the conditions which

led to or required the continuation of the foster care placement for the four children; (3) holding that

mother failed to maintain continuing contact with and provide or substantially plan for the future of

the children for a period of six months after the placement of the children in foster care; and

(4) admitting into evidence Dr. Craig S. King's February 6, 2013 confidential psychological

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

evaluation of mother. Upon review of the record and briefs of the parties, we conclude that this appeal is without merit.[1] Accordingly, we summarily affirm the decision of the trial court. Rule 5A:27.

Mother appealed to the trial court the juvenile and domestic relations district court's (JDR court) orders terminating mother's parental rights to S.H. and E.B. and approving relative placement for Al.B. and Av.B. The trial court heard evidence and argument on January 7, 2014. On January 13, 2014, the trial court entered an order terminating mother's parental rights to S.H. and E.B. and approving relative placement for Al.B. and Av.B. On February 19, 2014, the trial court entered form orders entitled "Order for Involuntary Termination of Residual Parental Rights" for the children E.B. and S.H., citing Code § 16.1-283(C)(1) and (2) as the bases for the terminations.

Mother has eight children. Six of the children first came into the custody of RDSS on October 27, 2011. Custody of four of these six children is at issue in this appeal. On October 27, 2011, mother's oldest child brought Al.B. to the hospital with a broken leg. Al.B. was eighteen months old at the time. Medical staff determined that the leg had been broken for three to four weeks and was caused by significant blunt force trauma. However, mother had not sought care for the child. While they were waiting for test results, mother came to the hospital and removed Al.B. from the emergency room without speaking with medical staff. The police located mother, and mother agreed to allow the child to be transported back to the hospital. Mother made no arrangements for the care of the other five children when she returned to the hospital with Al.B; therefore, they went into the custody of RDSS. RDSS also took custody of Al.B. based on the severity of his injury and mother's failure to obtain medical treatment for the child.

---

[1] By order entered on October 7, 2014, this Court granted appellant's petition for rehearing and vacated the Court's decision issued in the case on September 9, 2014.

The initial goal for the children was relative placement. At that time, mother had no stable housing. Saundra Collier, the foster care worker for the children, testified that Child Protective Services (CPS) had been working with mother for the past two years, assisting her with utilities payments and providing home services. Yet, despite the assistance, mother still had not maintained stable housing.

Collier testified that in May 2012, the goal for the children was changed to return to home. This change took place after mother's sister failed to follow up with RDSS concerning possible relative placement. RDSS began to work with mother to obtain the goal of return to home. RDSS recommended, and the JDR court ordered, that mother attend parenting classes through Stop Child Abuse Now (SCAN), complete psychological therapy, and follow up with a psychiatrist. RDSS also provided in-home services. Over a two-year period, mother only signed up for two SCAN classes and was unable to complete the twenty SCAN classes required by the court. In addition, when RDSS gained custody of the children, the four school-aged children were not registered for school. At that time, those children were ages nine, ten, thirteen, and fourteen years old.

In April of 2012, mother found housing and RDSS assisted her with the rental payments. RDSS also purchased furniture for the family and paid for her utilities, including some past due utility bills. RDSS paid for mother's psychological counseling and bus tickets for her job search. However, mother did not maintain steady employment. Mother attended therapy and saw a psychiatrist for a period of time. RDSS provided mother transportation to therapy and for visitation with the children.

Collier testified mother failed to take the children to medical and dental appointments and also failed to attend many of those appointments when they were scheduled by RDSS. Mother's three-year-old child required dental surgery, including tooth extractions, due to poor dental hygiene. Mother also failed to timely pay her rent, and RDSS made her rental payments for a period of time.

At the time of the trial court hearing, mother was behind in both her rent payments and utility payments.

Because mother failed to follow through with the recommended services, in the summer of 2013, the foster care goals changed for the four children who are the focus of this appeal. The two oldest children returned to mother's custody. The goals for Av.B. and Al.B. were changed to placement with relatives, and both were residing with their paternal relatives. Collier testified Av.B. had a well-established relationship since birth with the relatives of his father. His father is also "involved with him" and is supportive of the placement with his relatives. Al.B.'s father is also involved in his life.

The goal for E.H., who was seven years old at the time of trial, was to be adopted by her paternal grandmother. Collier testified that for E.H. adoption, rather than placement with the grandmother, was the better goal because the grandmother needed financial assistance to care for the child and that assistance would only be available if E.H. is adopted. E.H. had been in the care of the paternal grandmother since December 2012.

Collier testified the goal for S.H. was changed to adoption when her paternal grandmother changed her mind about relative placement because she "didn't want to have to deal with" mother. Collier stated "there were no other relatives that came forward." Collier testified S.H has been in a prospective adoptive home since October 27, 2011 and was doing "great." Collier stated mother no longer had visitation with S.H. based on an incident that took place in May of 2012.

Evidence was presented that mother initially had visitation with the children, but over time she had limited contact with them while they were in the custody of RDSS. Collier testified mother was rude to the caretakers of the children when mother would make telephone contact with the children. In addition, Collier stated the telephone calls from mother were infrequent. Mother testified that she was told by CPS that she could not contact the children. At trial, mother did not

know the addresses of three of the children. Mother also testified her income consists of a monthly Social Security check and money from babysitting two or three children in her home.

Dr. King performed three psychological evaluations of mother since May of 2012. His February 6, 2013 evaluation of mother was admitted into evidence without objection by mother. Dr. King testified that mother had reported hearing voices and having hallucinations when she is stressed, such as when her children were removed from her custody. At trial, mother denied having these issues.

Dr. King also testified mother had shown a pattern of an inability to meet the basic needs of the children over a significant period of time. He stated mother had not been able to obtain visitation over a consistent period of time and the children had a number of emotional and behavioral problems. He said that despite the fact that four of her children have been removed from her care, she was still behind on rent and utility payments. Dr. King opined it would be "very difficult" to return the four children to her care. Dr. King further stated that mother "does not have the ability to adequately provide for her children at this time."

Dr. King also evaluated S.H., who was twelve years old at the time of the evaluation. He concluded her academic, emotional, and behavioral functioning "had significantly and drastically improved while she was in the care of [her foster family] compared to when she was with her mother." He testified S.H. exhibited regressive behaviors in the past only after she had visits with her mother. Dr. King opined it would "be best" for S.H to stay in the "stable environment" of the foster family.

The guardian *ad litem* for the children opined that the goals proposed by RDSS regarding each of the children were appropriate and it was unfortunate that the family could not safely remain intact.

"When addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). On appeal, we presume that the trial court "thoroughly weighed all the evidence, . . . and made its determination based on the child's best interests." Id. at 329, 387 S.E.2d at 796. Furthermore, "[w]here, as here, the trial court heard the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Appellant argues the trial court erred in holding RDSS complied with its affirmative duty to investigate all reasonable options for placement of S.H. and E.H with relatives as a condition precedent to entering an order terminating her parental rights to these children.

However, appellant did not present these arguments to the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this assignment of error on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

Furthermore, RDSS does not have the duty "in every case to investigate the home of every relative of the children, however remote, as a potential placement." Sauer v. Franklin

Cnty. Dep't of Soc. Servs., 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994).  The duty to investigate is a rule of reason dependent upon the particular facts and circumstances of each individual case.  "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal."  Brown v. Brown, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

Here, Collier testified she asked mother about relatives and RDSS "reached out to the relatives."  Concerning S.H., Collier testified that, initially, the paternal grandmother "was interested" in a relative placement, however, she "said she didn't want to have to deal with [S.H.'s mother]."  Collier stated no other relatives came forward, therefore, RDSS changed the goal for S.H. to adoption.  Collier also testified RDSS pursued placement of the children with mother's sister, who failed to follow up with RDSS concerning possible relative placement.

In addition, RDSS recommended that E.H. be adopted by her paternal grandmother rather than "placed" with her grandmother based on financial concerns.  The guardian *ad litem* represented that E.H.'s paternal grandmother had demonstrated a great deal of commitment, was "supportive," and recognized the importance of family connections.  He also stated that adoption "appeared to be the only viable way [the grandmother] could provide for" E.H. and a family adoption is a "positive outcome" for the child.  In addition, as addressed below, clear and convincing evidence was presented supporting the termination of mother's parental rights to E.H. and S.H.

A court may terminate parental rights if it finds, based upon clear and convincing evidence, it is in the best interests of the child and that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the

reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Here, the evidence showed E.H. and S.H. had been in foster care for over two years. Yet mother had not completed parenting classes and remained behind on rent and utility payments despite receiving significant financial assistance and services from RDSS. Mother's contact with her children diminished over time, and she has no contact with S.H. At trial, she did not even know the addresses of three of her children. In addition, Dr. King, who had evaluated mother three times since May 2012, opined mother did "not have the ability to adequately provide for her children at [that] time." Dr. King also testified mother had mental health issues. Furthermore, the evidence showed E.H. and S.H. were in stable environments and were doing well. Dr. King also evaluated S.H. and concluded her academic, emotional, and behavioral functioning "had significantly and drastically improved while she was in the care of [her foster family] compared to when she was with her mother."

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). Furthermore, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out

when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's conclusion that termination of mother's parental rights was in the best interests of E.H. and S.H.

Mother also asserts the trial court erred by approving the change in permanency plan for Al.B. and Av.B. to placement with relatives because she substantially remedied the situation which brought the children into foster care.

Proof by a preponderance of the evidence is the appropriate standard in a case involving the modification of foster care plans pursuant to Code § 16.1-282. Padilla v. Norfolk Div. of Soc. Servs., 22 Va. App. 643, 645, 472 S.E.2d 648, 649 (1996).

As addressed above, evidence was presented that mother did not substantially remedy the situation which brought her children into foster care and she did not have the ability to adequately provide for her children. In addition, the goals of the permanency plans for both Av.B. and Al.B. were to place the children with paternal relatives. The guardian *ad litem* represented to the trial court that Al.B.'s father and a network of relatives were available to him in the locality of his relative placement. The guardian *ad litem* stated the relative who would obtain custody of Al.B. "is in a good position to secure his safety . . . connect him with resources and opportunities to maintain sort of a safe connection with the child's mother."

As to Av.B.'s relative placement, evidence was presented that Av.B. had a well-established relationship since birth with the relatives of his father. Veronica Barnes, Av.B.'s paternal aunt, testified Av.B. had lived with her intermittently for almost half of his nine-year life. She had had custody of him for the past year. Further, she testified she is able to care for him and he would also spend time with his paternal grandmother who lived nearby.

"In its capacity as factfinder, . . . the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Toms, 46 Va. App. at 266, 616 S.E.2d at 769 (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

RDSS proved, by a preponderance of the evidence, that the permanent goal of the foster care plan "placement with relatives" was in the best interests of Av.B. and Al.B. Accordingly, the trial court did not err by entering the permanency planning orders for these two children.

Finally, mother contends the trial court erred in accepting into evidence Dr. King's psychological evaluation of her dated February 6, 2013. However, mother did not make an objection to the trial court concerning the admission of this report into evidence. In addition, mother made no objection to Dr. King's trial testimony concerning the evaluation. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated 0with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

For these reasons, we summarily affirm the decision of the trial court. See Rule 5A:27.

Affirmed.