COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Fredericksburg, Virginia

UNPUBLISHED

MICHAEL ANDREW MALDINI

                                                       MEMORANDUM OPINION[*] BY
v.        Record No. 0477-17-4                         JUDGE RANDOLPH A. BEALES
                                                       JUNE 26, 2018

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A jury convicted Michael Andrew Maldini ("appellant") of forcible rape, attempted forcible

sodomy, and aggravated sexual battery of M.L.[1]  On appeal, appellant challenges two evidentiary

rulings made by the trial judge.[2]  In his second assignment of error, appellant argues that the trial

judge erred by limiting his cross-examination of M.L. regarding statements she allegedly made to

her roommate about flirting with an "older man in her unit" and a sexual encounter with that man.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] We refer to her by her initials in an attempt to better protect her privacy.

[2] Appellant's petition for appeal to this Court raised three assignments of error.  The
Court granted appellant's second and third assignments of error.  Appellant's first assignment of
error, which was not granted, states:

> The trial court erred when it denied the Defendant's request to
> admit into evidence by way of direct examination, or
> cross-examination, certain evidence set forth by the defense in the
> rape shield hearing pursuant to Virginia Code § 18.2-67.7 as said
> evidence was admissible to support a consent defense.

Appellant argues that these rulings violated "his Due Process right to confront his accuser and put forth his consent defense." In his third assignment of error, appellant argues that the trial judge erred by "refusing to allow the Defendant to impeach the victim through contradiction when she testified in response to questions on cross-examination that she did not recall."

I. BACKGROUND

A. Facts Related to the Sexual Assault

On appeal, we are required to view the evidence in the light most favorable to the Commonwealth because the Commonwealth was the prevailing party in the trial court. Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004). So viewed, the evidence showed that appellant and M.L. were both members of the United States Marine Corps. Appellant was a gunnery sergeant who was far senior in rank to M.L.; he was also a member of her chain of command and had direct oversight of M.L. and the other Marines in her unit. On February 7, 2016, during a training event in Quantico, Virginia, another female Marine became sick and needed to go to the hospital. Appellant drove the sick individual to Stafford Hospital, and he requested that M.L. accompany them.

M.L. testified that, while she and appellant waited at the hospital, appellant asked if she wanted to accompany him to his nearby home because he needed to let his dog out. She agreed. M.L. testified that, when they arrived at appellant's home, he said, "[O]h, I forgot, my ex-girlfriend has the puppy." M.L asked if they should return to the hospital; however, appellant invited her inside.

M.L. testified that appellant gave her a guided tour of the home. She stated that, during this tour, "he grabbed two shot glasses and said, Marine, let's take a shot." M.L., who was only nineteen at the time, testified that it was early in the afternoon and that she did not want to take a shot. However, she understood appellant's statement to be "a direct order from a superior," and

- 2 -

therefore, she drank a shot of vodka with him. Appellant then invited M.L. to "check out [his] basement." She testified that she believed that going into the basement was a continuation of his guided tour of the home.

The basement contained a sitting area with a couch around a television, a guest bedroom, and a bathroom. M.L. testified that appellant put on a movie for them to watch and told her to "take your boots off . . . and just relax." Appellant poured two more shots and said, "Marine, we are going to take another shot." M.L. attempted to decline the alcohol, but appellant persisted, saying, "Marine, you are going to take this shot with me." M.L. testified that she took the shot without swallowing it. She then went to the nearby bathroom where she spit out the vodka.

M.L. then testified that, while watching the movie, "I felt a touch on the lower side of my back, and that's when I proceeded to stand up and turn towards him and say, what are you doing." M.L. stated that appellant "stood up vigorously" and told her to "just relax," while he restrained her arms. M.L. stated, "[T]he next thing I remember is being on my back on the bed with my pants unbuttoned and he [appellant] is trying to pull them down." She testified that appellant removed her pants and penetrated her with his penis.[3] M.L. recalled for the jury that appellant told her to "just relax" and that they could "make this a regular thing."

In describing her attempt to fight off appellant, M.L. testified that she scratched him on his neck and she used "[e]verything that [she] had at that moment," to push him off. After she scratched him, M.L. stated that he grabbed her by the hair and "tried to force [her] mouth towards his penis," however, she kept her mouth closed. At one point, appellant lost his grip on her hair, which enabled M.L. to stand up, pull up her pants, and lock herself in the bathroom where she

---

[3] Appellant testified in his defense at trial and stated that he and M.L. engaged in consensual sexual intercourse in the basement of his home. Appellant testified, "[W]e kissed for an extended period of time on the couch, and I asked her if she wanted to move it to the bedroom, and she said yes." He stated that, once they were in the bedroom, M.L. "perform[ed] oral sex on me. . . . Then after that we proceeded to have intercourse."

dressed and fixed her hair. She testified that, after leaving the bathroom, she went upstairs where appellant indicated that they needed to get back to Marine headquarters to "dismiss the Marines." Appellant then drove them back to the unit's headquarters in Anacostia, in Washington, D.C.

Regarding the assault, M.L. testified, "I was disappointed in myself that I couldn't stop it," and she reiterated to the jury that she did not want to have sexual intercourse with appellant. She also testified about how she had been affected by the assault. Specifically, she noted she had been in therapy for several months, testified she had experienced nightmares related to the event, and said she had contemplated committing suicide on multiple occasions.

Another Marine, Amber Steele, testified that she saw appellant later on February 7, 2016, after he returned to Anacostia. She testified, "[A]s I looked at him I saw this huge like gash on his neck . . . it was really red . . . . I don't normally notice things like that but it was so bad that I was like, wow." Steele testified that she jokingly asked if appellant had been "attacked by a cat," but "he just kind of smirked and like laughed it off . . . ."

Appellant's and M.L.'s commanding officer, Captain Taylor Adams, testified that, in May 2016, he learned that an individual in his unit had filed an anonymous "restricted report" of a sexual assault.[4] Captain Adams eventually learned that M.L. filed the restricted report. Adams stated that he informed appellant that M.L. had filed the report because "[h]e was the Staff Noncommissioned Officer in charge . . . essentially . . . the second guy in command." Adams said, "When I told him

---

[4] Captain Adams explained,

> A restricted report is an avenue for a sexual assault victim to report their incident, have it documented, the accused is not identified, the details of the incident are not disclosed, generally . . . [it] is a system for the event to be documented, and it also opens up avenues of mental health or medical services if need be.

By contrast, if a victim makes an unrestricted report, then the full details of the incident are reported to the military chain of command and law enforcement personnel.

that [M.L.] had filed the report I would say that he got a little pale-faced . . . . In my opinion, I would say he was a little nervous." Adams further testified that he spoke with M.L. in June 2016, when she decided to make an unrestricted report. Captain Adams described M.L.'s demeanor during that conversation as "very sad and nervous, her eyes were very tearful, and she had started crying a few times during the course of our conversation."

### B. Statements Regarding Sexual Conduct (Assignment of Error II)

Before trial, appellant filed a notice of intent to present evidences of prior sexual conduct of the complaining witness. Specifically, he intended to offer evidence that M.L. allegedly made statements to appellant about her sexual preferences and previous sexual relationships with *other people*. Appellant's motion did not address any statements about any alleged sexual relationship or activity between appellant and M.L. Following a hearing on the matter, and pursuant to the rape shield statute, Code § 18.2-67.7, the trial judge denied appellant's motion and precluded him from offering evidence of statements regarding M.L.'s alleged sexual relationships with other people because it was "not prior sexual or subsequent sexual conduct between the complaining witness and the accused, and that's what would be required in order to fit within that statutory exception."

Subsequently, during defense counsel's cross-examination of M.L. at trial, defense counsel attempted to question M.L. about statements that she allegedly made to her roommate, Mackenzie Reese. Defense counsel asked M.L., "Now, you had told Mackenzie Reese prior to that night that you had been flirting with an older guy in your unit who was a Sergeant, had you not?" The Commonwealth objected, and defense counsel made the following proffer during a bench conference to argue that the "older guy . . . who was a Sergeant" was, in fact, appellant:

> Your Honor, I have been given discovery from the Commonwealth, including a phone conversation between [Detective] Parsons . . . and Mackenzie Reese and Mackenzie told Parsons that prior to this incident that [M.L.] had mentioned that *she had been flirting with an older member of the unit, either a Sergeant or something, and that when she came home that night she said, we had sex but it didn't turn*

> *out the way I wanted it to.* Mackenzie Reese was initially
> subpoenaed for the November trial, she was not again subpoenaed
> for this trial. And I submit that I can still cross examine [M.L.] with
> respect to whether or not she said anything of that nature to
> Mackenzie Reese.

(Emphasis added). Therefore, appellant's position at trial was that these statements were actually in reference to sexual conduct between M.L. and appellant.

The trial judge sustained the Commonwealth's objection. He stated for the record that defense counsel's question would not be permitted because "the subject of sexual conversations between the parties was specifically the subject of a defense motion," and because Mackenzie Reese had not been subpoenaed. Thereafter, defense counsel supplemented her previous proffer and argued that she was *not* questioning M.L. with regard to statements about sexual conduct between M.L. and *other* people. Rather, defense counsel was asking M.L. about statements she made regarding her sexual encounter with appellant on February 7, 2016, which she argued was outside the scope of the trial court's previous ruling on appellant's pretrial motion.[5] Nevertheless, the trial judge still sustained the objection and noted defense counsel's exception for the record.

---

[5] Defense counsel stated:

> Your Honor, I just wanted to make it clear that the proffer of where I
> was going on that was *not anything about the relationship with
> anyone else*. . . . Which I took to be the subject of the denial of the
> [pretrial motion]. *But with respect the relationship between my client
> and [M.L.]* as to what happened that night of February 7th on her
> initial report to her roommate.

(Emphasis added).

C. Attempts to Impeach M.L.'s Recollection of Events (Assignment of Error III)

At various points in defense counsel's cross-examination of M.L., she testified that she could not recall certain facts regarding the events of February 7, 2016.[6] In an attempt to impeach M.L.'s recollection of events, defense counsel called Detective Robert Parsons, who had spoken to M.L. during his investigation of the assault. In anticipation of this testimony, the Commonwealth made the following oral motion to address the scope of Detective Parsons's testimony:

> [I]f counsel has got questions she believed she asked that [M.L.] testified to and then gave a contrary statement at another point in time then that's classic impeachment, that's fine. But what I want to guard against, Judge, what the Commonwealth is concerned about is this becoming a wide-open effort and counsel just tries to get into the entire statement of [M.L.] to Detective Parsons, and that's a clear hearsay violation. Impeachment is very specific and it's tied to the specific answer that was given. . . . We just don't want to see this become this big open-ended, well, I'll just call Detective Parsons and tell me everything [M.L.] said, because that would violate hearsay and it violates the very essence of the impeachment rule, Judge. Thank you.

After hearing argument from counsel, the trial judge ruled that Detective Parsons's testimony regarding M.L.'s out-of-court statements would be admissible for the purposes of impeachment (after defense counsel established an appropriate foundation). Thereafter, defense counsel questioned Detective Parsons about M.L.'s statements during the investigation. The Commonwealth objected twice when it claimed that the questions about M.L.'s statements were

---

[6] Appellant's brief states in relevant part:

> At trial, defense counsel asked the victim several questions about whether she had told other people that she had her cell phone at the time of the offense, that she had grabbed her boots shortly after the time of the offense, and that she wanted to file an unrestricted report because she did not like the way the Defendant was treating her, in response to which the victim testified that she did not recall.

overly broad.  However, following each objection, defense counsel rephrased the question, and the entirety of Parsons's testimony was then admitted.

## II. ANALYSIS

"[Appellate courts] review a circuit court's decision to admit or exclude evidence under an abuse of discretion standard and, on appeal, will not disturb a circuit court's decision . . . absent a finding of abuse of that discretion."  Herndon v. Commonwealth, 280 Va. 138, 143, 694 S.E.2d 618, 620 (2010).  "Only when reasonable jurists could not differ can [an appellate court] say an abuse of discretion has occurred."  Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743, adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005)).

### A.  Limiting the Cross-Examination of M.L.

Code § 18.2-67.7, the rape shield statute, states in relevant part:

> [G]eneral reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted.  Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:
>
> . . . .
>
> Evidence of sexual conduct between the complaining witness and the accused offered to support a contention that the alleged offense was not accomplished by force, threat or intimidation or through the use of the complaining witness's mental incapacity or physical helplessness, provided that the sexual conduct occurred within a period of time reasonably proximate to the offense charged under the circumstances of this case . . . .

Code § 18.2-67.7(A)(2).  "The complaining witness's 'prior sexual conduct' means any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, *excluding the conduct involved in the offense alleged under this article*."  Code § 18.2-67.10(5)

(emphasis added). Thus, by definition, "conduct involved in the offense" is expressly outside the scope of the rape shield statute.

On brief, appellant argues that "flirting" is not "sexual conduct," and therefore, this question should not have been precluded by the trial judge. However, appellant did not make this argument before the trial court. See Rule 5A:18. In addition, appellant argues that "he was thwarted in putting forth his defense of consent" because the trial judge would not allow defense counsel to explore "whether the victim had told another person she was flirting with an older Sergeant prior to the incident" and explore "whether the victim told another person that she had sex on the night in question but it did not turn out the way she wanted." By not permitting appellant, who was an "older Sergeant," to confront his accuser about the statements she allegedly made to her roommate regarding the incident in question, appellant argues on appeal that the trial court violated his constitutional rights under the Confrontation Clause and his right to a fair trial. In response, the Commonwealth argues that appellant made no argument on constitutional grounds in the trial court, and, therefore, no constitutional argument is preserved for appeal. The Commonwealth also argues that any possible error by the trial court was harmless.

On this assignment of error, which is appellant's second assignment of error in his petition for appeal, we assume without deciding that the trial court erred in prohibiting appellant's cross-examination of M.L. with regard to statements she allegedly made to her roommate about "flirting with an older member of the unit" and that "we had sex but it didn't turn out the way that [M.L.] wanted it to." See Cairns v. Commonwealth, 40 Va. App. 271, 285-88, 579 S.E.2d 340, 347-48 (2003) (finding harmless error, because of "overwhelming evidence before [the trial court] to support the convictions," where the trial court omitted statements from the complaining witness' journal that would have impeached her trial testimony). We find that appellant did not make an argument regarding the Confrontation Clause or any other constitutional arguments in the trial court

regarding this assignment of error. He simply argued that his questions to M.L. were not prevented by the rape shield statute because they were about the incident in question (and the alleged flirtations between M.L. and appellant), and we, therefore, apply the standard for non-constitutional harmless error.[7] See Rule 5A:18; Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (*en banc*) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). See also Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("Rule 5A:18 applies to bar even constitutional claims.").

When confronted by a possible error in the trial court, we are required by Code § 8.01-678 to conduct a harmless error analysis. See Code § 8.01-678; see also Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (in which the Supreme Court stated that Code § 8.01-678 makes "harmless-error review required in *all* cases"). "Absent an error of constitutional magnitude, 'no judgment shall be arrested or reversed' when 'it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached . . . .'" Kirby v. Commonwealth, 50 Va. App. 691, 698, 653 S.E.2d 600, 603 (2007) (quoting Code § 8.01-678). An error is harmless if it has not "substantially influenced the jury." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001). The Supreme Court has also stated, "If other evidence of guilt is so overwhelming and the error insignificant, by comparison, supporting a conclusion that the error did not have a substantial effect on the verdict, the error is harmless." Angel v. Commonwealth, 281 Va. 248, 268, 704 S.E.2d 386, 398 (2011).

---

[7] During oral argument to this Court, when asked whether a constitutional harmless error or a non-constitutional harmless error analysis would be appropriate to resolve this assignment of error, appellant's counsel agreed with the Commonwealth that this Court should apply a non-constitutional harmless error analysis.

Here, overwhelming evidence supports appellant's convictions. Appellant invited M.L. to his house to "go let [his] dog out" despite the fact that there was no dog at the home when they arrived. Once inside, appellant directed M.L., who was his military subordinate and only nineteen years old, on two occasions to drink shots of vodka with him. After appellant led M.L. to the basement, he told her to sit down on the sofa and remove her boots. He then put his hand on her back. When she stood up and asked him, "What are you doing?!" he restrained her arms, forcibly removed her clothing, and forced her to engage in sexual intercourse. He also then attempted to force her to perform fellatio on him. M.L. testified unequivocally that she did not want to have sexual intercourse or any sexual relations with appellant. The Supreme Court has been clear that a sexual assault victim's testimony by itself is sufficient to convict the accused if the trier of fact believes the victim. See Fisher v. Commonwealth, 228 Va. 296, 299, 321 S.E.2d 202, 203 (1984) ("A rape conviction may be sustained solely upon the testimony of the victim. There is no requirement of corroboration."). In fact, M.L. testified that she resisted his assault with "[e]verything that [she] had at that moment," and she severely scratched appellant on his neck. Another Marine, Amber Steele, testified that, later on the day of the assault, she saw a huge gash on appellant's neck after he had returned to Marine headquarters. Appellant's neck wound was so severe that Steele joked that appellant must have been attacked by a cat. Furthermore, Captain Adams testified that appellant became pale and appeared to be nervous when Adams informed him that M.L. had made an anonymous report of sexual assault. Adams also testified that M.L. eventually reported the assault to him and appeared visibly shaken when doing so, even though months had elapsed since the day of the assault.

### B. Detective Parsons's Testimony

On appellant's third assignment of error, we find that the trial court did not abuse its discretion. The trial court decided that Detective Parsons could testify – for the purposes of

impeaching M.L. – about previous statements that M.L. had made which may have been inconsistent with her trial testimony. Furthermore, we note that the Commonwealth objected twice during Detective Parsons's direct examination, but, after each objection, defense counsel was permitted to rephrase the question, which was then allowed and answered. In addition, we note that, at oral argument before this Court, appellant's counsel agreed that Detective Parsons's testimony, which counsel had sought, was actually admitted to the record – and that his testimony "addressed all the questions" from defense counsel at trial and "cured" any possible error.[8]

## III. CONCLUSION

Here, assuming without deciding that the trial court erred by limiting appellant's ability to cross-examine M.L. about statements she had allegedly made regarding a supposed sexual encounter with an older Marine in her unit, who arguably was appellant, we find that any such error was harmless, given the other overwhelming evidence of appellant's guilt in this case. Furthermore,

---

[8] At oral argument, appellant's counsel, who did not represent appellant during the trial, stated the following with regard to appellant's third assignment of error:

> We went back and reviewed the transcripts and the case and *we've reviewed the Assistant Attorney General's brief and I think those points are well taken*. I think, our argument is that the trial court did err. I think the trial counsel did have a right to contradict the witness with something other than just direct contradictory statements. I think whether it was to show that her [M.L.'s] recollection was, or her perception was skewed or maybe that she had made some other kind of statement to someone else, I think they could have questioned that. But by putting, *I think it was Detective Parsons on the stand, I think he kind of addressed all the questions and kind of cured that error* – so I think with [the Court's] permission we wouldn't really focus on that one, just mostly on this [other] issue [the other assignment of error before this Court].

(Emphasis added). Because the entirety of Detective Parsons's testimony was admitted to the record and because counsel for appellant has indicated that any possible error has been "cured," we need not address this assignment of error further. This Court appreciates counsel's candor and his faithful adherence to his ethical and professional duties as an attorney in the Commonwealth.

we find that the trial court did not err in the way it handled Detective Parsons's testimony. For all of these reasons, we affirm appellant's convictions.

<u>Affirmed.</u>